**UNITED STATES of America,**
**Appellee,**

v.

**Martin William MONTEER, Appellant.**

No. 74–1578.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 11, 1975.

Decided April 1, 1975.

Rehearing and Rehearing En Banc
Denied April 29, 1975.

R. Thomas Day, Asst. Federal Public Defender, Kansas City, Mo., for appellant.

J. Whitfield Moody, Asst. U. S. Atty., Kansas City, Mo., for appellee.

Before MATTHES, Senior Circuit Judge, HEANEY and WEBSTER, Circuit Judges.

MATTHES, Senior Circuit Judge.

Martin William Monteer, Wilbert Leroy Coonce, and Harry Dale Boyle were jointly indicted for robbing the bank of Ionia, Missouri, and placing in jeopardy the lives of Rosella Schnackenberg, cashier of the bank, and Eunice Emma Friedly, bookkeeper of the bank, by the use of dangerous and deadly weapons, to wit, a pistol and a knife, in violation of 18 U.S.C. § 2113(a) and (d). Coonce, who is a half-brother of Monteer, and Boyle pleaded guilty to the charge. Monteer stood trial and was convicted by a jury. He has appealed from the judgment of conviction.[1]

Appellant does not challenge the sufficiency of the evidence to sustain the jury's verdict. Instead, appellant through the public defender who has represented him in both the trial court and on appeal, presents two contentions of prejudicial error, which will be discussed below. Appellant also has filed pro se briefs, raising numerous other claims of error.

We first consider the facts in abbreviated form.

The government's evidence shows that at mid-morning on March 14, 1974, Monteer and Boyle entered the Ionia Bank. There were no other persons present, except the two employees above named. Monteer asked Mrs. Friedly for a roll of quarters, but instead of paying her $10.00, the value of the quarters, Monteer exhibited a pistol and directed Mrs. Friedly and Miss Schnackenberg to lie on the floor. Both complied. Thereupon, Monteer went behind the counter, where the employees were lying. At that time, Monteer had a knife in his possession. Monteer obtained $2,816 from the cash drawers behind the counter and he and Boyle then left the bank through the rear door. While Mrs. Friedly was lying on the floor, she was able to and did obtain an accurate description of Monteer and Boyle. Both had long, shoulder-length hair, dark brown in color, and full, dark beards. Monteer was taller but slighter in build than Boyle. Both Monteer and Boyle were well dressed, more so than the average customers of the bank, although neither wore a tie. Monteer was wearing a brown coat and Boyle wore a blue coat. During their conversations with Mrs. Friedly, Monteer and Boyle were approximately three feet from her. She took particular notice of them because their hair and beards appeared to be identical.

Although he did not enter the bank, Coonce participated in the offense. He had driven Monteer's automobile from Independence, Missouri, to Sedalia, Missouri, the night before the holdup. Monteer and Boyle drove to and from the bank robbery in another automobile they had stolen in Sedalia, Missouri, but after

1. Monteer stipulated that the deposits of the bank were insured by the Federal Deposit Insurance Corporation.

the holdup Coonce met Monteer and Boyle at a prearranged location, where the two robbers abandoned the stolen car. The three then proceeded in Monteer's automobile, with Coonce driving, to a deserted building, where the money obtained in the holdup was stashed. Later, through the cooperation of Coonce, the stolen funds were recovered.

A report of the holdup was made immediately to law enforcement officials. Shortly after the robbery, Monteer, Boyle, and Coonce were apprehended. Coonce cooperated with the law enforcement officials and testified for the government at Monteer's trial.

Almost immediately after the bank robbery law enforcement authorities had come to consider Monteer a suspect in the case. On the very afternoon and evening after the robbery, F.B.I. agents showed a series of photographs of various men to Mrs. Friedly and asked her to determine if any of the men photographed resembled either of the robbers. In examining the pictures, Mrs. Friedly placed a piece of paper over the lower part of the face in each photograph in order to create the effect of seeing each man bearded. Mrs. Friedly selected a picture of Monteer. The next day, Mrs. Friedly viewed two lineups, in both of which Monteer was one of the participants. In the first lineup, consisting of three men, Mrs. Friedly tentatively identified Monteer. At Mrs. Friedly's request, in a second lineup of four men (one of the original three was no longer available and was replaced by two other men) each of the men took turns wearing a wig and beard. Mrs. Friedly positively identified Monteer in the second lineup.

As noted at the outset, counsel for Monteer relies upon two claims of error in seeking a reversal and remand for another trial.

■ Counsel first attacks Mrs. Friedly's identification of Monteer, claiming that the pretrial photographic displays and lineups were suggestive in nature and tainted Mrs. Friedly's in-court identification. Judge Hunter, the trial judge, conducted an evidentiary hearing on May 16, 1974, on Monteer's motion to suppress Mrs. Friedly's identification. Mrs. Friedly was examined at length as to the photo displays and the lineup proceedings. Four law enforcement officers also testified, as did Monteer. At the conclusion of the hearing, Judge Hunter denied the motion.[2] Subsequently Judge Hunter filed a memorandum opinion in support of the order denying the motion to suppress.

In denying the motion, the district court recognized that an in-court identification of a defendant will be suppressed if the source of that identification is a lineup conducted in violation of the Due Process Clause of the fifth and fourteenth amendments to the United States Constitution. Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972); United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178

**2.** Judge Hunter concluded:

I am satisfied from all of the evidence in this case that the Motion to Suppress Identification, and I note that it simply moves the Court for an order suppressing the use of any identification of the defendant Monteer by Eunice Friedly, is without merit and is overruled upon my specific finding, first, that the identification by Eunice Friedly of this defendant, Martin William Monteer, is, as a matter of fact, totally independent of both and each the lineup and the picture lineup.

Mrs. Friedly's testimony, which I accept as credible, on the subject is very strong and to the point that she was bookkeeper of the Bank of Ionia, Missouri, on March 14, 1974, at the time of the mentioned robbery of that bank, and that for a period of five minutes she had the opportunity to, and did, look closely at this defendant, Martin William Monteer. She took particular note of him. She stated that she was closer than three feet, in fact, about two and a half feet from him.

She gave a careful and rather concise description of him and his clothes as they appeared to her on that occasion, and testified that she identified him from her look at him on that five-minute occasion, did so independently of any pictures that were shown to her or any lineup situation in which she participated in which this defendant was present.

(1967). Judge Hunter also considered the use of photographs as a means of identification and recognized that in Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), the Supreme Court held that when the claim is made that the use of photographs was suggestive and unduly prejudicial, such a contention must be evaluated in light of the totality of the surrounding circumstances and that each case must be considered on its own facts. "[C]onvictions based on eye-witness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. United States, *supra*, 390 U.S. at 384, 88 S.Ct. at 971.

In accordance with these principles, the district court held in its memorandum opinion that, "Neither the photographic showup nor either lineup were unduly suggestive, or in fact suggestive in any manner." We have carefully examined the evidence offered in support of the motion to suppress Mrs. Friedly's identification. No useful purpose will be served in detailing such evidence. It is sufficient to observe for the purposes of this opinion that we find nothing to demonstrate that the photographs exhibited to Mrs. Friedly and the lineups which she observed were in any respect improper or violative of the principles enunciated by the Supreme Court.

But even assuming *arguendo* that the photographs or lineups were in some way improper, we, like Judge Hunter in his memorandum opinion, are convinced that Mrs. Friedly's in-court identification of Monteer was not influenced in any respect by the photographs or lineups. Consequently, since Mrs. Friedly's in-court identification was independent of the photographs and lineups, it was properly admissible at the trial regardless of the pretrial identification proceedings. *See* United States v. Wade, *supra*, 388 U.S. at 241, 87 S.Ct. 1926; United States v. Allen, 497 F.2d 160, 163

(5th Cir. 1974); Evans v. Janing, 489 F.2d 470, 474 (8th Cir. 1973). Here, Mrs. Friedly saw Monteer at close proximity for approximately five minutes during the robbery and she afterwards gave a detailed and accurate description of his build, facial features, and clothing. At no time during the next day and a half did she express doubt about her description of the robbers and she never failed to identify Monteer when he appeared in a lineup or a photographic display—a fact which enhances the reliability of her independent identification and confirms that she did indeed get a good look at Monteer during the robbery.

■ Counsel's second attack upon appellant's conviction is based upon the following direct examination at the trial of Coonce, the driver of the second getaway car.

> MR. MOODY (attorney for government): Who was driving it [the getaway car]?
>
> COONCE: I was.
>
> Q: And at whose instruction was that?
>
> A: Bill Monteer.
>
> Q: Did he give any reason why you should drive?
>
> A: It was just that I didn't have no record.
>
> Q: Do you mean that you have never—you have never been convicted—
>
> MR. FREEMAN (attorney for Monteer): Just a moment, Mr. Moody.

THE COURT: Come up, gentlemen. After a short colloquy between the court and the attorneys, the court denied appellant's motion for a mistrial and instructed the jury to disregard Coonce's last answer.

Counsel for appellant urges that the government's questioning and Coonce's answer enabled the government to place before the jury prejudicial evidence that Monteer had a criminal record since one can infer that if Coonce was driving because he had no record, the other two defendants, Boyle and Monteer, were not driving because they did have records.

We find no error. The trial judge appropriately observed: "the response does not carry the full impact that you [Monteer's attorney] import to it." The judge likewise was on sound ground in observing that the prosecutor did not act in bad faith in interrogating Coonce. In our view Monteer has magnified the subject questions and answers beyond all proportions. Defense counsel has attributed prejudicial error to an innocuous incident, which in our judgment did not have any adverse impact on the jury.

In any event, if we assume *arguendo* that Coonce's remark was improper, the error did not affect the substantial rights of the appellant. Rule 52(a) Fed. R.Crim.P.; Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). Moreover, even if Coonce's statement was an impropriety of constitutional magnitude, it is clear beyond a reasonable doubt that any error was harmless. *Cf.* Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Coonce's statement was a fleeting one, and the jury was instructed by the court to disregard it. Moreover, the inference from Coonce's statement that appellant had a criminal record was indirect at best, and it is not at all clear that the members of the jury would have even realized that Coonce had indirectly made reference to appellant's criminal record.

In addition to the two issues already discussed, Monteer raises a number of points in his various pro se briefs to this court: that his arrest at home was illegal and in violation of the fourth and fourteenth amendments, and that a pre-indictment lineup is a critical stage requiring the presence of counsel. The lineup question has been resolved above. The remaining pro se contentions have been examined. They lack substance. In summary, we find no basis for reversal and remand.

Accordingly, the judgment of conviction is affirmed.