**UNITED STATES of America, Appellee,**

v.

**Donald G. BEARDSLEE and Robert W. Gorman, Appellants.**

**Nos. 79–1315, 79–1316.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 12, 1979.

Decided Nov. 27, 1979.

Thomas M. Bradshaw, Asst. Federal Public Defender, Kansas City, Mo., for appellant Gorman.

Robert B. Thomson, Linde, Thomson, Fairchild, Langworthy & Kohn, Kansas City, Mo., for appellant Beardslee.

J. Whitfield Moody, Asst. U. S. Atty., Kansas City, Mo., for appellee; Ronald S. Reed, Jr., U. S. Atty., on brief.

Before GIBSON, Chief Judge, and HEANEY and ROSS, Circuit Judges.

GIBSON, Chief Judge.

Robert Gorman and Donald Beardslee appeal their convictions pursuant to a jury verdict finding them guilty of violations of 18 App. U.S.C. § 1202(a)(1) (1976) and 18

U.S.C. § 922(g) (1976) by possessing firearms and transporting firearms interstate after having been convicted of a felony. On appeal, Gorman and Beardslee challenge the admission at trial of evidence seized in a search and the admission of evidence of other crimes. Beardslee also contends that the Government did not present sufficient evidence on the element of interstate transportation to support a conviction and objects to certain jury instructions.

On December 15, 1978, two Kansas City, Missouri, police detectives received a radio bulletin concerning an apparent attempt to rob the Broadway National Bank of Kansas City, Missouri. The bulletin reported the observations of two Brinks employees. As they arrived at the bank in a Brinks armored truck, they observed two white males wearing ski mask-type caps, one of which was brown, approaching the entrance of the Broadway National Bank. The two individuals, upon noticing the Brinks truck approaching the bank, turned and retreated from the vicinity of the bank entrance. One of the individuals appeared to be carrying a sawed-off shotgun or rifle under his coat. The retreat brought the individuals to a 1973 black-over-green Ford LTD, which was parked in the parking lot of the Valentine Shopping Center wherein the bank was located. The Brinks employees last observed that the LTD bore license number Z4D 747 and proceeded westbound on Valentine Road.

Shortly after receiving the broadcast regarding the observations of the Brinks employees, Detectives Barfield and Roberts received another broadcast stating that the LTD had been seen going northbound on Pennsylvania from Valentine.

The detectives undertook to patrol the vicinity in their unmarked car, and shortly thereafter pulled into an underground parking garage at 33rd and Pennsylvania, approximately five blocks from the Broadway National Bank. As they entered, a 1975 white-over-red Pontiac Grand Prix was leaving the garage. In the front seat of the Pontiac, a male passenger appeared to be attempting to hide behind the female driver. A second white male, wearing a brown ski mask-type cap, was seated in the back seat. As the police car passed the Pontiac, one of the detectives noticed that the car lacked the Metropolitan Junior College sticker required for parking in the garage. The Pontiac did display a temporary Florida license plate. Also while turning into the parking garage, the detectives saw a black-over-green Ford LTD conspicuously parked in the parking lot at an angle which resulted in its taking up a portion of two spaces.

After the Pontiac left the garage, the detectives turned their vehicle around, left the parking garage, followed the Pontiac for a short distance, and then stopped the Pontiac by use of their siren and red lights. At this point they were approximately one mile from the bank.

The female driver, later identified as Marilyn Gorman, stopped the Pontiac, left the car and approached the police vehicle. The detectives ordered her to return to her car because they were awaiting the arrival of requested assistance cars. Before the assistance cars arrived, a radio broadcast confirmed that the LTD had been stolen. After the arrival of other officers, Detective Barfield approached the Pontiac, ordered the female driver out, searched her for weapons, found a loaded .45-caliber clip in a jacket pocket and placed her under arrest. Meanwhile, Detective Roberts, approaching the Pontiac from the right rear, observed the occupant of the rear seat, Beardslee, pointing a rifle with an altered stock toward another police officer. Roberts reached through the window and grabbed Beardslee's shoulder, forcing him to lower the rifle. He then announced to the other officers that the occupants of the automobile were armed and requested Detective Barfield to remove the rifle from Beardslee, which Barfield did after searching and arresting the female driver. A search of the passenger in the front seat, Gorman, produced a Colt .45-caliber automatic pistol found in a shoulder holster and another Colt .45-caliber automatic pistol was retrieved from the rear seat where Beardslee had been sitting.

After the arrest of all of the occupants of the Pontiac, a police evidence technician searched its interior at the scene of the arrest for evidence of identification. Later, after obtaining a written consent to search the Pontiac from Marilyn Gorman, the registered owner, a search of the trunk at the police lot produced a 12-gauge Eastfield shotgun.

On January 10, 1978, a federal grand jury returned a superseding three-count indictment against Gorman and Beardslee. Count I charged each with, after having been convicted of a felony for the robbery of a bank, knowingly transporting or causing to be transported four firearms from Miami, Florida, to Kansas City, Missouri, in violation of 18 U.S.C. §§ 922(g)(1) and (2) (1976). Count II of the indictment charged Gorman with violation of 18 App. U.S.C. § 1202(a)(1) (1976) by virtue of his having been convicted of a felony and thereafter possessing a pistol which had previously been transported in interstate commerce. Count III charged Beardslee with, after having been convicted of a felony, possessing a rifle and a pistol, both of which had previously been transported in interstate commerce.

Prior to trial, each defendant filed a motion to suppress the firearms found in their possession and other evidentiary items seized from the Pontiac in which they were riding at the time of their arrest, including the shotgun seized from the trunk during the search at the police lot. The District Court [1] held an evidentiary hearing on these motions on February 20 and 21, 1979, and overruled them. On February 24, 1979, a jury found the defendants guilty on all counts of the indictment in which they were named. Each defendant was sentenced to a term of five years on Count I, and two years on the other count in which he was named, to run concurrently with the sentence imposed on Count I.

I.  *Alleged Illegal Search and Seizure*

Appellants argue that the original stop of the Pontiac constituted an unlawful seizure under the fourth amendment and therefore all evidence seized as a result thereof should be suppressed by virtue of the exclusionary rule. *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *Wong Sun v. United States*, 371 U.S. 471, 484, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

■ The District Court correctly relied upon *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), and *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and denied the motion to suppress the evidence seized from the Pontiac and its passengers. In *Terry*, the Supreme Court recognized the constitutionality of an investigatory stop and subsequent frisk of an individual if the officer has a reasonable suspicion that criminal activity is afoot and his own safety is in jeopardy. 392 U.S. at 30, 88 S.Ct. 1868. In the case at bar, the arresting officers' suspicion that the occupants of the Pontiac were involved in criminal activity was supported by articulable facts. The officers had received information via a police radio bulletin that indicated the possibility of an attempted bank robbery. They observed appellant Gorman suspiciously attempting to hide behind the driver of the Pontiac. Appellant Beardslee's hat fit the description contained in the radio broadcast. The Pontiac did not have the necessary parking sticker for the lot it was leaving. A Ford LTD matching the description in the radio broadcast was parked in the lot the Pontiac was leaving. Coupled with the knowledge that a typical modus operandi for bank robbers includes abandoning a stolen vehicle that was used as a getaway car and having another person drive a different car to switch into, the radio bulletin and their own observations provided the detectives with a sufficient basis to justify an investigatory stop of the Pontiac.

■ After the Pontiac had been stopped, Detective Roberts observed through the window that Beardslee was pointing a firearm at another officer. There can be no question that, after this observation, in order to protect themselves the detectives had

---

1.  The Honorable Elmo B. Hunter, United States District Judge, Western District of Missouri.

probable cause to arrest Beardslee and to conduct further searches of him and the accompanying passengers, as well as the automobile in which they were riding. *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977); *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *United States v. Powless*, 546 F.2d 792, 794–95 (8th Cir.), *cert. denied*, 430 U.S. 910, 97 S.Ct. 1185, 51 L.Ed.2d 588 (1977). Although the detectives also received a radio broadcast to the effect that no bank robbery or attempted bank robbery had taken place, this did not detract from the possibility that criminal activity had taken place, or a conspiracy to commit criminal acts was taking place by the observed occupants of the LTD and the transferred vehicle. The possibility remained that the individuals seen by the Brinks employees had committed sufficient acts to meet a legal definition of attempted bank robbery, had conspired to rob a bank or another business or person in the area, or were guilty of the crime of carrying a concealed weapon in violation of Mo.Stat.Ann. § 571.115.

## II. *Evidence of Other Crimes*

Appellants complain about the introduction of evidence of conspiracy to rob a bank, or attempted bank robbery, and evidence implicating Gorman and Beardslee in the theft of the Ford LTD. They contend that this evidence should have been excluded because it was immaterial, irrelevant and prejudicial.

At trial the Government introduced the testimony of the Brinks employees concerning their observations around the Broadway National Bank. Appellants objected to this testimony on the basis that any possibility of a bank robbery was not material or relevant to the issue of whether they were in possession of firearms at the time of their arrest. In addition, the Government sought to introduce testimony that the Ford LTD in the underground parking lot had been stolen. Immediately after the officer made this statement, defense counsel objected. The court then advised the jury that the

defendants were not on trial for any offense not charged in the indictment, but it refused to grant the motion for a mistrial.

■ While some of the evidence implicating the appellants in criminal activity other than that for which they were charged may have been properly admissible under the *res gestae* rule, *Carter v. United States*, 549 F.2d 77, 78 (8th Cir. 1977), it is difficult to conceive of how the stolen character of the Ford LTD could have had any relevance. However, the reference to the stolen LTD was an unsolicited comment from a witness, and we find that it is clear beyond a reasonable doubt that this testimony did not affect substantial rights of the appellants because any possible error was harmless in view of the immediate cautionary instruction, the indirect nature of the implication of criminal activity, and the overwhelming evidence presented to the jury demonstrating appellants' possession of the firearms and interstate transportation thereof. *United States v. Monteer*, 512 F.2d 1047, 1051 (8th Cir.), *cert. denied*, 423 U.S. 855, 96 S.Ct. 103, 46 L.Ed.2d 80 (1975).

## III. *Sufficiency of the Evidence*

■ Beardslee contends that although the evidence showed that Gorman had purchased the weapons found in Beardslee's possession and he had purchased the pistol found in the possession of Gorman, there was no direct evidence or testimony linking Beardslee to the apparent transportation of any firearm from Florida to Missouri. We find, however, that the Government produced substantial evidence from which the jury might properly find that Beardslee had transported, or caused to be transported, the firearms described in the indictment in interstate commerce. *See United States v. Atkins*, 473 F.2d 308, 310 (8th Cir. 1973), *cert. denied*, 412 U.S. 931, 93 S.Ct. 2751, 37 L.Ed.2d 160 (1974). Testimony revealed that the weapons found in the possession of Gorman and Beardslee had been purchased in Florida, some by Gorman and some by Beardslee, and further established that they had traveled together. The observations leading to their arrest, including the testi-

mony of the Brinks employees, furnished additional support for the inference that they had acted in concert regarding the transportation of the firearms.

We find that sufficient circumstantial evidence supported the reasonable inference that, acting in concert, the two had transported the firearms from Florida to Missouri.

### IV. *Jury Instructions*

Beardslee argues that the District Court erred in instructing the jury that

> Whoever commits an offense against the United States, or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
>
> Whoever wilfully causes an act to be done, which if directly performed by him or another would be an offense against the United States, is punishable as the principal.

■ Beardslee contends that this instruction violates due process because the indictment does not explicitly charge him with aiding and abetting, and that aiding and abetting is a separate offense which must be specifically charged.

This court has previously rejected similar arguments. As stated in *United States v. Gonzalez*, 582 F.2d 1162, 1165 (8th Cir. 1978), the aiding and abetting "statute merely codified the accepted principles governing who could be held liable for the commission of a substantive offense." *See also Mays v. United States*, 261 F.2d 662, 664 (8th Cir. 1958).

■ Beardslee also contends that it was improper for the District Court to instruct the jury

> that possession in one state of property recently purchased in another state, if not satisfactorily explained, is ordinarily a circumstance from which the jury may reasonably draw the inference and find in the light of surrounding circumstances shown by the evidence in the case that the person in possession of it transported, or caused it to be transported in interstate commerce, but you are not required to draw that inference or for that matter

to draw any other inference. You are permitted to draw from the facts which you find have been proved from the evidence in the case such reasonable inferences as you find the facts to reasonably bear and none others.

He argues that this instruction shifts the burden of proof from the Government to the defendant and thus violates his due process right to be presumed innocent. This argument is without merit. The instruction did not shift the burden of proof and reasonably instructed the jury on the inferences which it could draw. *See Barnes v. United States*, 412 U.S. 837, 844–45 & n.8, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973); *United States v. Johnson*, 563 F.2d 936 (8th Cir. 1977), *cert. denied*, 434 U.S. 1021, 98 S.Ct. 746, 54 L.Ed.2d 768 (1978).

Judgment affirmed.