UNITED STATES of America, Plaintiff,

v.

Mitchell JACKSON, Defendant.

No. 82–127CR(1).

United States District Court,
E.D. Missouri, E.D.

June 30, 1983.

Daniel P. Reardon, St. Louis, Mo., for plaintiff.

Henry Fredericks, Asst. U.S. Atty., St. Louis, Mo., for defendant.

## MEMORANDUM

NANGLE, District Judge.

The government brought this action against the defendant for a violation of 18 U.S.C. § 1202(a)(1) (Appendix). The indictment charges that the defendant, who is a convicted felon, "did knowingly receive, possess or transport in commerce or affecting commerce a firearm, that is, a Smith & Wesson Model 29–Z, 44 Magnum, 6 shot revolver serial number N68009." The parties in this action agreed to waive a jury and requested specific findings of fact.

This case was tried to the court sitting without a jury. The court having considered the pleadings, the testimony of the witnesses, the documents in evidence, and the stipulations of the parties, and being fully advised in the premises, hereby makes the following findings of fact and conclusions of law as required by Rule 23 of the Federal Rules of Criminal Procedure.

## FINDINGS OF FACT

1. The defendant, Mitchell Jackson, had been convicted of a felony under the laws of the State of Missouri, punishable by imprisonment for more than two years, prior to October 14, 1981.

2. The firearm described in the indictment was manufactured in the State of Massachusetts, and was shipped from Massachusetts to the State of Texas on or about September 26, 1972. This firearm was examined and tested by a firearm expert of the St. Louis Police Department. The expert found the firearm to be operable and capable of functioning in the manner for which it was designed.

3. On October 14, 1981, Police Officers Robert Pizzella, William Meyer and Eddie Givens were engaged in a routine patrol by automobile. At approximately 7:30 p.m. on October 14, 1981, Police Officer Robert Pizzella, who was operating the marked police car, was driving north on Taylor. At this time, Police Officer William Meyer was in the front passenger seat and Police Officer Eddie Givens was in the rear seat.

4. As the police vehicle proceeded along Taylor from Olive Boulevard, Officer Pizzella. turned eastbound into an alley between Olive and Washington Avenues in the City of St. Louis. The headlights of the automobile were on at the time Officer Pizzella made this turn.

5. Officer Pizzella testified that as he made this turn the headlights of the police car threw a beam of light on to the defendant and one Jimmie Johnson, who were in the alley, facing the car. Pizzella further testified that when Johnson and the defendant saw the marked car, they immediately ran deeper into the alley as Johnson shouted "It's the police, man, run." As the officers viewed the flight of the men, Pizzella accelerated the car and proceeded deeper into the alley, at which time Officer Meyer leaned out the passenger window and ordered the men to halt. In response to the order, the two men stopped running, put their hands over their head, and turned around so that they were facing the police car and the officers.

6. Officer Pizzella further testified at trial that when the men turned towards the officer in the car he noticed that the defendant's jacket was open and that a chrome revolver was sticking out of his waistband. Four to five inches of the gun were exposed. At this point in time Officers Pizzella and Meyer alighted from the police car, immediately approached the defendant and removed the firearm, described in the indictment, from the defendant's waistband. The firearm was a Smith & Wesson, Model 29–Z, 44 Magnum revolver, stainless steel finish, 6 shot capacity, 5 inch barrel, and bearing serial number N68009, and fully loaded with 44 magnum ammunition. Givens got out of the automobile, but did not proceed further than the front end of the car. This court credits the testimony of Officer Pizzella and finds that the defendant had the firearm on his person as described by the officer.

7. Officer Meyer offered testimony at trial which was similar if not identical to the testimony of Officer Pizzella. However, there were a number of details that

Officer Givens was unable to remember and therefore his testimony was of no consequence in determining the sequence of events on October 14, 1981.

8. After removing the firearm from the defendant, Officer Pizzella marked and packaged it. Officer Pizzella identified the government's Exhibit 1 at trial as the weapon he removed from the defendant on October 14, 1981.

9. In addition to contending that the firearm was not on his person, an assertion to which this court does not give any credit, the defendant also argues that the weapon was wrongfully seized. The defendant has filed a motion to suppress in which he contends that the firearm seized by the officers should be suppressed because the search and seizure was made without lawful authority and without a search warrant. In addition, the defendant asserts that his arrest was made without a warrant, lawful authority, or probable cause. In making this argument, the defendant has asked the court to view the evidence in the light most favorable to the government by assuming that the incidents took place in the manner described by the government.

## CONCLUSIONS OF LAW

The government brought this action pursuant to 18 U.S.C. § 1202(a)(1) (Appendix). The defendant, who is a convicted felon, is charged with possessing a firearm in violation of the aforementioned statute. The sole issue is whether the weapon, seized from the defendant's person, see Findings of Fact Nos. 7, 9, 10, should be suppressed.

In *Terry v. Ohio,* the Supreme Court held that under certain circumstances the Fourth Amendment will allow a policeman to seize a person and subject him to a limited search for weapons without probable cause for an arrest. 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The essential inquiry is "[w]hether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interfer-

ence in the first place." *Id.* at 20, 88 S.Ct. at 1879. The court reasoned that the police officer must be able to offer "specific and articulable facts which taken together with rational inferences from these facts, reasonably warrant that intrusion." *Id.* The court concluded that

there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed, the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.

*Id.* at 27, 88 S.Ct. at 1883.

Applying the above standard to the facts of this case, it must be concluded that the officers were justified in stopping the defendant and his companion. It was appropriate to stop the two men in the alley, after Johnson stated "[i]t's the police, man, run" and then he and the defendant began to run. See Finding of Fact No. 6. These events provided the officers with "specific and articulable facts" which warranted the subsequent intrusion. Furthermore, the removal of the weapon from the defendant was a search reasonably limited in scope to the accomplishment of the goal which justified the initial intrusion. *Sibron v. New York,* 392 U.S. 40, 64, 88 S.Ct. 1889, 1903, 20 L.Ed.2d 917 (1968); *Terry v. Ohio,* 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968). Officer Pizzella assured the protection of the police and the public by disarming the defendant. See Finding of Fact No. 7. Therefore, it is the conclusion of this court that the actions of the officers constituted a valid investigatory stop and frisk under the principles approved by the Supreme Court in *Terry v. Ohio, supra.*[1]

---

1. There are two alternative grounds which also validate the search of the defendant and the

seizure of the weapon. It can be concluded that after viewing the weapon, the officer had

## ORDER

Pursuant to the memorandum filed herein this day,

IT IS HEREBY ORDERED, ADJUDGED and DECREED that the defendant is found guilty as charged on the indictment herein.

probable cause to arrest the defendant. Under this theory, the officer conducted a search incident to a legal arrest which is a recognized exception to the warrant requirement. *See United States v. Beardslee,* 609 F.2d 914 (8th Cir.1979). A final justification for the search of the defendant is the plain view doctrine which would allow for the search of the defendant and the seizure of the weapon under the circumstances of this case. After halting the defendant, the weapon was in plain view, the

discovery of the weapon resulted from a legally justified intrusion under the principles articulated in *Terry v. Ohio, supra,* the discovery was inadvertent, and finally the incriminating nature of the gun was apparent. *United States v. Sanders,* 631 F.2d 1309, 1314 (8th Cir.1980). Therefore, all the essential elements of the plain view exception to the warrant requirement were present and validated the seizure of the weapon.