**UNITED STATES of America,
Appellant,**

v.

**Johnny Ray ROBERTS, Appellee.**

**No. 87-2617.**

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 21, 1988.

Decided Oct. 17, 1988.

Rehearing Denied Dec. 13, 1988.

Larry D. Harman, Kansas City, Mo., for appellant.

John R. Osgood, Asst. U.S. Atty., Kansas City, Mo., for appellee.

Before McMILLIAN, JOHN R. GIBSON and MAGILL, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Johnny Ray Roberts was convicted of bank robbery in violation of 18 U.S.C. § 2113(a), (d), and transporting a firearm in interstate commerce after previously being convicted of a felony, an act prohibited by 18 U.S.C. §§ 922(g)(1) and 924(a). On appeal he raises two arguments. First, that the court referred to the Federal Deposit Insurance Corporation instead of the Federal Savings and Loan Insurance Corporation in instructing the jury, and second that there was no evidence to support a finding that the weapon had been transported in interstate commerce. We find these arguments to be baseless, and affirm the judgment of the district court.

The Blue Valley Savings and Loan of St. Joseph, Missouri was robbed by two armed men on July 7, 1987. Gary Smith, a codefendant of Roberts, testified that the two of them, along with a man named Al Looze, met in Iowa on July 3 or 4 to discuss robbing a bank in Des Moines. On July 7 they met at the Iowa residence of Julie Wolter, and later drove around a Des Moines bank before deciding not to rob it. They then agreed to rob a bank in Missouri, and the three left for St. Joseph, Missouri in Looze's green Chevrolet Monza. Upon arrival, Roberts and Looze left the car and Smith drove away. The two rejoined Smith following the robbery and the group left St. Joseph, only to be later apprehended by the highway patrol.

After the indictment was filed an omnibus hearing was held by the Chief United States Magistrate. Defendant and counsel stipulated that the Savings and Loan institution was insured by an agency of the United States government. The senior vice president of the Blue Valley Savings and Loan identified a certificate of insurance issued to Blue Valley Federal by the Feder-

al Savings and Loan Insurance Corporation. This item was introduced into evidence and later passed to the jury for inspection.

At trial Smith identified an M–11 machine pistol as one he had seen in Al Looze's possession around July 1, 1987 at the Wolter residence. He also stated that he had seen the machine pistol in Looze's car trunk. This weapon was identified by the employees and customers of the Savings and Loan as similar to the machine pistol they saw on the day of the robbery. One of the highway patrolmen testified that after the vehicle was stopped Roberts was in the right rear passenger seat and the same pistol was lying in a paper bag on the left side of the rear seat. A resident of Des Moines testified that he had owned the machine pistol, but sold it in July, 1986.

The district court, at the commencement of trial, read to the jury the indictment which charged that the Blue Valley Savings and Loan was insured by the Federal Savings and Loan Insurance Corporation, but cautioned that the indictment was not evidence. At the conclusion of the trial the court again read the indictment with its reference to insurance by the Federal Savings and Loan Insurance Corporation. In the instruction containing the elements of count one, however, the fourth element recited that the deposits were "insured by the Federal Deposit Insurance Corporation." The government frankly admits inadvertently tendering the erroneous instruction, having simply selected the wrong "mag card." No objection was made to the giving of this instruction.

The jury returned verdicts of guilty on both counts. Roberts was sentenced to twenty-five years on the robbery count and five years on the transportation of the weapon count.

■ Roberts argues that proof of Blue Valley's insurance status was an essential element of the crime to be proved in order to establish federal jurisdiction, and because the alleged error goes to jurisdiction it cannot be harmless. He argues that *United States v. Fitzpatrick,* 581 F.2d 1221, 1223 (5th Cir.1978) (per curiam) there-fore mandates reversal. We could conclude that the failure to object to the instruction forecloses Roberts from raising this issue on appeal, but we will not so limit our ruling. Here it was stipulated that the Savings and Loan robbed was a federally insured institution. Evidence of the FSLIC certificate was admitted, and the actual certificate passed to the jury for inspection. The court read the indictment to the jury before evidence commenced, and again at the conclusion of the evidence, clearly referring to insurance issued by the Federal Savings and Loan Insurance Corporation. Under these circumstances, we cannot conclude that the error in referring to the Federal Deposit Insurance Corporation rather than the Federal Savings and Loan Insurance Corporation is sufficient to justify reversal. Both the stipulation and evidence place the correct insurer before the jury for its consideration. The reference in the instructions to both insurers could not have confused and misled the jury since only one insurer, the correct insurer and the one named in the indictment, was in the evidence submitted to the jury for consideration. Similar convictions in somewhat similar circumstances were affirmed in *United States v. Wright,* 365 F.2d 135 (7th Cir.1966) and *United States v. Brown,* 616 F.2d 844 (5th Cir.1980).

■ With respect to interstate transportation of the weapon, Roberts admits that *United States v. Buck,* 804 F.2d 239 (2d Cir.1986) (evidence of weapons purchase in Florida and arrest with same weapons after travel to Missouri sufficient to allow inference of interstate transportation) and *United States v. Beardslee,* 609 F.2d 914 (8th Cir.1979) (surveillance of travel through two states sufficient to allow jury finding of guilt) "provide persuasive reasoning that there was sufficient evidence of interstate transportation of the weapon by appellant." Brief of Appellant at 23. Smith saw the weapon in Looze's possession at the Wolter appartment in Des Moines. There was evidence that the weapon had been sold to an unknown person approximately a year before in Des Moines. Smith, Looze and Roberts dis-

cussed robbing a bank in Des Moines, drove around one, and then decided to drive together to St. Joseph. The machine pistol was identified by bank employees and customers as the one used in the robbery. Finally, when the highway patrol stopped the car, Roberts was in the right rear passenger seat and the machine pistol was in a brown paper bag on the left side of the rear seat. As in *Beardslee*, we are satisfied that this is sufficient circumstantial evidence to support a reasonable inference that "acting in concert the [three] had transported the firearms from [Iowa to Missouri]." *Beardslee*, 609 F.2d at 919.

The arguments vigorously pressed by Roberts have been carefully considered and rejected. We therefore affirm the judgments of conviction.