UNITED STATES of America, Appellee,

v.

Mabel HUCKABY, Appellant.

No. 82–1650.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 15, 1982.

Decided Dec. 13, 1982.

Rehearing and Rehearing En Banc
Denied Jan. 6, 1983.

Certiorari Denied April 4, 1983.
See 103 S.Ct. 1526.

Samuel A. Perroni, Stanley D. Rauls, William R. Wilson, Jr., Little Rock, Ark., for appellant.

George W. Proctor, U.S. Atty., Robert J. Govar, Asst. U.S. Atty., Little Rock, Ark., for appellee.

Before HEANEY and ROSS, Circuit Judges, and HENLEY, Senior Circuit Judge.

HEANEY, Circuit Judge.

Mabel Huckaby appeals from her convictions on eight counts of violating the Medicaid Act by fraudulently obtaining a greater amount of Medicaid payments than she was due. We affirm.

The Federal Grand Jury for the Eastern District of Arkansas indicted defendant Mabel Huckaby on October 20, 1981. The indictment alleged ten counts of Medicaid fraud in violation of 42 U.S.C. § 1396h(a)(3).[1] Specifically, the indictment charged Huckaby with concealing and failing to disclose the actual level of care that Cumberland Lodge Nursing Home provided to ten Medicaid recipients for the purpose of fraudulently securing Medicaid payments in greater amount than was due. Huckaby pled not guilty at her arraignment, and a jury trial was held on March 9–16, 1982.

Under the Arkansas Medicaid Plan, providers of long term care services to Medicaid recipients (providers) are reimbursed for the reasonable cost of long term care services. The amount of the reimbursement depends upon the level of care the Medicaid recipient requires. Each provider regularly submits a form identified as Arkansas Social Services Evaluation of Need for Nursing Home Care Form SS–703 (703) to assist Arkansas Social Services in identifying the level of care each Medicaid patient needs. Based to a great degree on these forms, Arkansas Social Services classifies recipients as skilled care (class A), intermediate care (class B), or minimum care (class C). A provider receives the most money per patient per day for class A patients, and the least for class C patients. Arkansas Social Services reimburses the providers directly.

The Cumberland Lodge Nursing Home (Cumberland) was located in Little Rock, Arkansas, and was an authorized provider of long term care services. Appellant Huckaby owned an interest in and participated in the management and operation of Cumberland along with her husband Ray Huckaby.

The charges against Huckaby originate with ten 703 forms which Cumberland submitted to Arkansas Social Services in August, 1979. The purpose of the 703 form is to describe a patient's physical and mental condition. Patient condition determines level of care classification. The two-page form is divided into sections labeled "Diagnosis," "Status of Major Impairment," "Degree of Incapacity," "Plan of Care," "Nursing Home Services Required," "Nurses Comments," "Assessment of Social Needs," and "Prognosis." Three sections, "Degree of Incapacity," "Nursing Services Required," and "Status of Major Impairment," are completed by checking appropriate blanks. The remaining sections have blanks for making comments.

Elizabeth Johnson, Director of Nursing at Cumberland, filled out the forms in August, 1979. Johnson began working for Cumberland in November, 1978. At trial, she testified she and Huckaby had a number of

---

1. 42 U.S.C. § 1396h(a)(3)(i) provided in pertinent part:

(a) Whoever—

\* \* \* \* \* \*

(3) Having knowledge of the occurrence of any event affecting (A) his initial or continued right to any such benefit or payment \* \* conceals or fails to disclose such event with an intent fraudulently to secure such benefit or payment either in a greater amount or quantity than is due \* \* \*

shall (i) in the case of such a \* \* \* concealment [or] failure \* \* \* by any person in connection with the furnishing (by that person) of items or services for which payment is or may be made under this subchapter, be guilty of a felony and upon conviction thereof fined not more than $25,000 or imprisoned for not more than five years or both[.]

disagreements about the correct way to fill out 703s starting in February, 1979. Johnson said Huckaby told her she was not showing enough intermediate and skilled care patients on the forms. On this occasion, Huckaby told Johnson to redo the forms four times. Johnson testified she filled out the forms the same way every time because, in her opinion, the forms properly reflected each patient's condition. The fourth and last time Johnson redid the forms she put them in an administrative office and left for the day. She took the following day off, but called the nursing home midway through the afternoon to check in. When she called, she discovered Huckaby had three employees redoing the 703s. Johnson went to the Social Services office the following Monday to examine the forms and found ten had been changed to reflect a greater degree of patient incapacity. Huckaby fired Johnson when she returned to Cumberland to tender her resignation.

The redone forms were delivered to Arkansas Social Services. Dr. Ray A. Brinkley, a private physician working with Arkansas Social Services, reclassified all the Medicaid recipients named in the forms from class "C" (minimum care) to class "B" (intermediate care) based on the information in the forms. As a result of this reclassification, Cumberland received an additional $2,788.76 over the next six months.

At the conclusion of the government's case, Huckaby moved for judgment of acquittal on all counts. The motion was denied in part and the court [2] reserved ruling on the sufficiency of Counts VI and X. The court also denied a defense motion for a mistrial stemming from allegedly prejudicial testimony from a government rebuttal witness. The jury returned a guilty verdict on all ten counts. The court set aside the verdict as to Counts VI and X. The court sentenced Huckaby to a suspended one-year and one-day term of imprisonment on each remaining count, the terms to run concurrently, and placed her on probation for a total of four years. In addition, the court fined Huckaby $8,000 ($1,000 for each count) and directed her to make restitution in the sum of $2,511.96.[3]

Huckaby appeals her conviction. She challenges the sufficiency of the evidence used to convict her and the sufficiency of the indictment under which she was charged. She also argues the Medicaid fraud provision is unconstitutionally vague. Finally, she maintains the district court erred in not declaring a mistrial when the government elicited testimony concerning other crimes contrary to Fed.R.Evid. 404(b).

A. *Sufficiency of the Evidence.*

Huckaby argues the evidence was insufficient to establish that she violated 42 U.S.C. § 1396h(a)(3) because the government did not prove: (1) the actual level of care Cumberland provided to the named Medicaid patients, and (2) that she knowingly concealed or failed to disclose this level of care with intent to defraud the government.

Huckaby's first argument assumes the government needed direct evidence of the actual care Cumberland patients received in order to prove the charges in the indictment. Because Cumberland could have provided more nursing care than patient condition necessitated, Huckaby maintains proof of actual care is crucial to the case.

For the most part, government witness testimony followed a set format. The witnesses compared the information on each patient contained in the 703s to their own knowledge about the patient's condition.[4]

---

**2.** The Honorable George Howard, Jr., United States District Judge for the Eastern District of Arkansas.

**3.** The court deducted $276.80 from the total amount of money Cumberland received as a result of the upward reclassification because the jury verdicts were set aside for Counts VI and X.

**4.** Most of the government witnesses were employees at Cumberland and testified from personal knowledge. The government also called Dr. Roy Brinkley. Dr. Brinkley, a physician with Arkansas Social Services, reviewed the nurse's notes kept on each patient and gave his opinion about each patient's condition based on his expert review of these daily logs.

For example, all of the 703 forms represent that the named patient needs total help with grooming, including bathing, care of hair and dressing. Government witnesses testified these patients needed little or no help with these tasks. Similarly, all but one of the forms described the named patients as bedfast. The witnesses disagreed, characterizing these same patients as up and about and taking care of themselves. In Huckaby's view, this type of testimony does not prove the charges against her.

██ We disagree. The jury could reasonably infer Huckaby concealed or failed to disclose the actual level of care these Medicaid patients received from government witness testimony that she misrepresented these patients' needs on the 703 forms. In reviewing challenges to the sufficiency of the evidence, this Court views the evidence in the light most favorable to the verdict rendered and accepts all reasonable inferences from the evidence which support the verdict. *United States v. Yancy,* 688 F.2d 70, 71 (8th Cir.1982); *United States v. Taylor,* 599 F.2d 832, 837 (8th Cir.1979). We will not disturb the jury's logical conclusion that misrepresentation of one set of facts—patient condition—was intended to conceal another set of facts—actual level of care.

Moreover, the government introduced nursing notes kept on each named patient each day for the month before Cumberland submitted the 703s to Social Services. These nursing notes are regularly kept records of the care the nursing staff gives to all patients on the nursing shift. They provide direct evidence of the actual care the named patients received. There is a clear discrepancy between the care recorded in the nurse's notes and patient condition as represented in the 703s.[5]

A careful review of the nurse's notes, witness testimony, and the 703 forms support the jury's conclusion that the 703 forms were used to conceal the actual level of care provided to the named Medicaid patients.

Huckaby also challenges the sufficiency of the evidence demonstrating her intent to defraud the government. In this case, as in many others, circumstantial evidence is the only available means of proving intent. The circumstances surrounding the changed forms evince Huckaby's intent to defraud.

From the start of her disagreements with Johnson over the correct way to fill out the 703 forms, Huckaby said she wanted more intermediate and skilled care patients. She put a red line through "incorrect" forms and marked where the checks should go. When Johnson adamantly refused to change the forms, Huckaby turned them over to other employees to be redone. These employees testified they knew Huckaby's aim was to upgrade patient classification. Huckaby told one employee that Arkansas Social Services put a grid over the check marks and classified patients based on the location of the marks in the grid. This employee was told to put as many checks as possible in the "total help" section. Huckaby told other employees to leave the "degree of incapacity" section blank so that she and another administrator could fill out this crucial section. Employees filling in the "nurse's comments" section were instructed to begin each comment with the phrase "this patient needs total care due to * * *" and finish with an ailment from the patient's chart. In addition, when Huckaby fired Johnson for objecting to the changed form, she told Johnson it was because "she was no longer loyal to their cause."

Other nursing home owners and operators testified at trial that Huckaby should

---

5. This discrepancy is clear when the "Degree of Incapacity" section of the 703 form is compared with the daily nurse's notes kept at this same time period. All of the 703s have "Total Help" marked under grooming. The nurse's notes show six of these patients generally took care of their own grooming needs. Similarly, the blanks next to "bedfast" and "sits in chair part time" are marked on the 703s for seven of the eight named patients. In contrast, the nurse's notes report these patients walked whenever they wanted, without assistance. Finally, all of the patients were designated "markedly confused" and "hyperactive" on the 703s. The nurse's notes show only one patient who fits that description.

have been aware of the condition of Cumberland's residents. Yet, she directed her employees to exaggerate these patients' incapacities on the 703 forms. The government introduced evidence of financial difficulties at Cumberland to supply a motive for fraud. Indeed, misrepresenting these patients' conditions did financially benefit Cumberland. The jury had two options. They could believe that Huckaby directed the forms be changed because she thought these patients were much worse off than either the nurse's notes or employee testimony reflect. Alternatively, the jury could have reasonably concluded that Huckaby ordered the 703s changed so these patients would be falsely reclassified, and Cumberland would receive a greater reimbursement. The evidence is sufficient to sustain the latter conclusion.

After viewing the evidence in the light most favorable to the government, we conclude the jury could have found beyond a reasonable doubt that Huckaby concealed the actual level of care given to the named patients with intent to defraud the government. *See In re Winship,* 397 U.S. 358, 362, 90 S.Ct. 1068, 1071, 25 L.Ed.2d 368 (1970); *United States v. Baker,* 650 F.2d 936, 938 (8th Cir.1981). Thus, the evidence is sufficient to prove each element of the indictment.

### B. *The Indictment.*

■ Huckaby argues the indictment does not charge an offense prohibited by the fraud provision of the Medicaid Act.[6] 42 U.S.C. § 1396h(a)(3). The provision prohibits concealing or failing to disclose a known event affecting the continued right to payment with an intent fraudulently to secure a payment in excess of what is due. *Id.* The indictment charged Huckaby as follows:

> that on or about August 9, 1979, in the Eastern District of Arkansas, Mabel Huckaby, with intent to defraud the United States of America and the State of Arkansas, did conceal and fail to disclose *the actual level of care* provided by Cumberland Lodge Nursing Home to Medicaid recipient (patient's name) for the purpose of securing Medicaid payments in greater amount than was due, a violation of Section 1396h(a)(3) of Title 42 of the United States Code. [Emphasis added.]

Huckaby claims "actual level of care" is not an "event affecting" the continued right to benefits because an event is necessarily an occurrence of limited duration such as the death or transfer of a patient. In addition, she asserts the indictment does not allege that she knew the actual level of care Cumberland patients received.

We cannot agree Congress intended section 1396h(a)(3) to control only the artificially narrow category of cases Huckaby proposes. According to the legislative history, Congress intended to prohibit a broad range of Medicaid program abuse. *See* 1972 U.S.Code Cong. & Ad.News 4989, 5093. Concealing the level of care given to Medicaid recipients in order to defraud the government out of additional Medicaid funds is undoubtedly within the purview of the statutory prohibition.

We likewise find the indictment adequately charged Huckaby with knowledge of the concealed event. Charging her with failing to disclose the event implies Huckaby knew the subject of her cover-up. Moreover, the indictment alleges the essential element of intent to defraud. This allegation also implies Huckaby knew what she was concealing.

■ An indictment is sufficient if it may be reasonably construed to charge the offense for which the defendant is convicted. *United States v. Czeck,* 671 F.2d 1195, 1197 (8th Cir.1982). The indictment filed against Huckaby clearly meets this standard.

Huckaby also argues the indictment is unconstitutionally vague because it necessarily incorporates a standard for determining level of care which is "vague, ambiguous, uncertain, and indefinite." Huckaby

---

6. Huckaby challenged the indictment in a pretrial motion although not on this ground. Nonetheless, to a limited extent, challenges to the sufficiency of an indictment are cognizable for the first time on appeal. *See United States v. Czeck,* 671 F.2d 1195, 1197 (8th Cir.1982).

refers here to the standards used by Dr. Roy Brinkley to classify nursing home patients based on information in the 703 forms.

The fallacy of this argument, as the government points out, is that these standards were incorporated into the indictment. Huckaby is not charged with misapplying these standards. She is charged with putting false information on a form with intent to defraud the government in violation of a federal statute. The ambiguity in the standards may foster inconsistent judgments inside the Arkansas Social Services agency, but this ambiguity has nothing to do with Huckaby's conviction. The indictment is not unconstitutionally vague.

### C. *The Statute.*

Huckaby attacks the constitutionality of 42 U.S.C. § 1396h(a)(3) for the first time on appeal. She argues the vagueness of the statutory language offends due process.

Generally, constitutional challenges not raised before the trial court are not cognizable on appeal unless they constitute plain error. *United States v. Chrisco,* 487 F.2d 505, 506 (8th Cir.1973), *cert. denied,* 419 U.S. 847, 95 S.Ct. 84, 42 L.Ed.2d 77 (1974); *Tollett v. United States,* 444 F.2d 622, 625 (8th Cir.1971). *Cf. Becton v. United States,* 412 F.2d 1005, 1007 (8th Cir.1969). Nonetheless, we have considered Huckaby's vagueness challenge, and found it spurious. Criminal statutes are constitutional if they give fair warning of the proscribed conduct. *United States v. Harriss,* 347 U.S. 612, 617, 74 S.Ct. 808, 811, 98 L.Ed. 989 (1954); *United States v. Cartano,* 534 F.2d 788, 793 (8th Cir.), *cert. denied,* 429 U.S. 843, 97 S.Ct. 121, 50 L.Ed.2d 113 (1976). Huckaby claims the statutory phrase "occurrence of any event affecting" is overly broad and uncertain, raising legitimate questions about which occurrences affecting Medicaid payments must be disclosed. Even if this argument has merit, the requisite element of intent to defraud cures any ambiguity in the statutory description of the proscribed conduct. A nondisclosure of any event motivated by intent to defraud is prohibited. Read as a whole, the statute gives fair warning of the proscribed conduct and is clearly constitutional.

### D. *The Motion for a Mistrial.*

At trial, the defense presented evidence that Huckaby had no motive for exaggerating patient incapacity on the 703s because state regulations required her to hire more personnel as the number of intermediate and skilled care patients at the home increased. Thus, the argument goes, any extra funds gained by falsifying the 703s would be absorbed by the cost of increasing the staff. To rebut this defense, the government offered the testimony of Walter Hathaway, a Cumberland employee from October, 1979, to January, 1980. Hathaway testified he observed Huckaby punch in blank or dummy employee time cards while he was working at Cumberland. The appellant's counsel objected that the testimony violated Fed.R.Evid. 404(b) [7] and moved for a mistrial. The judge instructed the jury to regard the testimony as limited to the issue of whether the nursing home was understaffed and should be considered for no other purpose. The judge also told the jury to disregard the testimony as it pertained to Mabel Huckaby. On appeal, Huckaby argues the judge erred in not granting her motion for a mistrial.

The requirements for admission of evidence of other crimes, wrongs or acts are well established. The requirements are: (1) a material issue on which other crimes evidence may be admissible has been raised; (2) the proffered evidence is relevant to that issue; (3) the evidence of other crimes is clear and convincing. In addition, to be admissible on such issues as intent, knowledge, or plan, the other crimes evidence must relate to wrongdoing "similar in kind and reasonably close in time to the charge at trial." Finally,

---

7. Federal Rules of Evidence 404(b) provides:

    (b) *Other crimes, wrongs, or acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

the evidence otherwise admissible under Rule 404(b) may be excluded under Fed. R.Evid. 403, "if its probative value is substantially outweighed by the danger of unfair prejudice."

*United States v. Auerbach*, 682 F.2d 735, 739 n. 5 (8th Cir.1982), *quoting United States v. Robbins*, 613 F.2d 688, 693–694 (8th Cir.1979).

█ The evidence admitted in this case clearly meets these requirements. The defense raised the staffing issue. The government merely sought to rebut the argument that reclassification did not produce monetary benefits by showing Cumberland employees falsified time cards to give the appearance of a larger staff. An eyewitness report of time card falsification is relevant to this issue and meets the standard of clear and convincing proof. Moreover, any danger of unfair prejudice was adequately cured by the judge's instruction to the jury. The other crimes evidence was thus admissible, and the district court did not err in denying Huckaby's motion for a mistrial.

After carefully reviewing the record, including the trial transcript and all exhibits, we affirm the judgment.