# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-2310

_____

United States of America,

        Appellee,

v.

Paul Melvin Letts,

        Appellant.

\* \* \* Appeal from the United States District Court for the Northern District of Iowa

\* [TO BE PUBLISHED]

_____

Submitted:  January 9, 2001

Filed:  August 31, 2001

_____

Before LOKEN, HEANEY, and BYE, Circuit Judges.

_____

BYE, Circuit Judge.

Paul Melvin Letts appeals his conviction and sentence for being an illegal user of controlled substances in possession of a firearm — a violation of 18 U.S.C. § 922(g)(3).  Letts challenges his conviction by contending, for the first time on appeal, that § 922(g)(3) is unconstitutional.  Letts challenges his sentence by contending that the district court[1] erred when it found that Letts possessed firearms in connection with

_____

[1]The Honorable Michael J. Melloy, United States District Judge for the Northern District of Iowa.

another felony offense, resulting in a four level enhancement under U.S.S.G § 2K2.1(b)(5). Letts also claims he possessed the firearms for lawful sporting purposes or collection, and that the district court should have reduced his sentence by six levels under U.S.S.G. § 2K2.1(b)(2). We affirm the conviction and sentence.

## BACKGROUND

In October 1999, law enforcement officers received an anonymous phone tip indicating that Letts ran a methamphetamine (meth) lab on his farmstead in rural Winthrop, Iowa. Officers began surveilling the property, in particular two camper vehicles which allegedly served as the lab. On the second day of surveillance, the officers stopped Scott Hambly as he drove away from the campers. Hambly reported that the campers and their contents belonged to Letts, and that Letts allowed others to manufacture meth at the lab in exchange for some of the completed product. Armed with this additional information, the officers obtained search warrants for the campers and other buildings on the farmstead.

The ensuing search of the Letts garage, residence, campers, and other outbuildings revealed fifty-five firearms. In the garage, officers found two containers with user amounts of meth in a desk, other equipment and materials consistent with the manufacture of meth, and five firearms (two loaded) above the garage door. In the home, officers found marijuana pipes in Letts's bedroom, as well as a shotgun and a 9mm handgun. Letts had another twenty-seven firearms in a second bedroom, and seventeen firearms in the dining room. The campers contained equipment and ingredients used to manufacture meth, but no weapons. Pursuant to another search warrant, Letts submitted his urine for a drug screen. The sample tested positive for meth, and amphetamine.

The government charged Letts under 18 U.S.C. § 922(g)(3), which forbids an unlawful user of a controlled substance from possessing a firearm that has been shipped

or transported in interstate commerce. Prior to trial, Letts stipulated that all fifty-five firearms had been manufactured outside Iowa. A jury convicted Letts after a two-day trial. At the sentencing hearing, the district court increased Letts's base offense level of fourteen by six levels pursuant to U.S.S.G. § 2K2.1(b)(1)(F) (for offenses involving more than 50 weapons), another four levels pursuant to § 2K2.1(b)(5) (for possessing a firearm in connection with another felony offense), and refused to apply a six level downward adjustment under § 2K2.1(b)(2) (for firearms possessed solely for sporting purposes or collection). Letts's criminal history category of II, and adjusted offense level of twenty-four, resulted in a guideline imprisonment range of 57 to 71 months. The district court sentenced Letts to 57 months. Letts timely appealed.

## DISCUSSION

## I. The Constitutionality of 18 U.S.C. § 922(g)(3).

We review Letts's constitutional challenges to § 922(g)(3) for plain error, because he did not make those claims in the district court. See United States v. Huckaby, 698 F.2d 915, 920 (8th Cir. 1982).

Relying upon the Supreme Court's decision in United States v. Lopez, 514 U.S. 549 (1995), Letts first contends that § 922(g)(3) exceeds the reach of the Commerce Clause. In Lopez, the Supreme Court struck down § 922(q)(1)(A), which prohibited gun possession near a school. The Court held that the activity of possessing a gun near a school does not "substantially affect" interstate commerce. Id. at 561. Letts argues that Lopez's analysis extends to § 922(g) as well.

We have already distinguished Lopez from cases arising under § 922(g):

Lopez delineates three categories of activity that Congress may regulate under its commerce power. First, "Congress may regulate the use of the

channels of interstate commerce." Second, Congress may "regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities." Third, Congress may "regulate those activities having a substantial relation to interstate commerce." Lopez struck down § 922(q)(1)(A), a regulation that fell in the third category, because the regulated activity did not "substantially affect" interstate commerce, and Congress had, therefore, exceeded its commerce power when it attempted to regulate that activity. However, the "in or affecting" language in § 922(g) makes clear that an individual case may fall into either the second or third category. On the facts of this case, because the components of the ammunition are in interstate commerce, we are dealing with a regulation that falls within the second category.

United States v. Mosby, 60 F.3d 454, 456 n.3 (8th Cir. 1995) (internal citations omitted).

Like the ammunition at issue in Mosby, the firearms involved here were shipped or transported in interstate commerce. Letts stipulated to that fact prior to trial. Thus, Lopez has no application to this case. See, e.g., United States v. Chesney, 86 F.3d 564, 570-71 (6th Cir. 1996) (holding that a stipulation that gun had moved in interstate commerce was sufficient evidence to support a conviction under § 922(g) and that "Lopez . . . did not disturb the Supreme Court's precedents which indicate that a firearm that has been transported at any time in interstate commerce has a sufficient effect on commerce to allow Congress to regulate the possession of that firearm pursuant to its Commerce Clause powers.").

Letts next contends that a violation of § 922(g)(3) constitutes an impermissible "status" offense. He relies upon the Supreme Court's decision in Robinson v. California, 370 U.S. 660 (1962). In Robinson, the Supreme Court held that a person cannot be convicted of a crime simply because of his status as a drug addict. Id. at

-4-

667. Letts argues that he is being punished simply because of his status as a controlled substance user.

We disagree. Section 922(g)(3) targets the act of possessing a firearm, not a defendant's status as a drug user. See United States v. Winchester, 916 F.2d 601, 606 (11th Cir. 1990) ("The statutory language and legislative history of the Gun Control Act of 1968 [which includes § 922(g)] reveal that Congress' intent was to prohibit the possession of firearms by classes of individuals it deemed dangerous, rather than to punish persons solely for having a certain status under the law."). Where society has an interest in regulating a certain act, such as possessing a firearm, a statute that prohibits certain persons from committing that act does not violate Robinson's ban on status crimes. See United States v. Ocegueda, 564 F.2d 1363, 1366-67 (9th Cir. 1977) (addressing an earlier version of a statute that prohibited unlawful users of narcotic drugs from receiving a firearm, and holding that the statute did not violate Robinson).

Both of Letts's constitutional challenges to § 922(g)(3) lack merit. We therefore find no plain error that justifies reversing his conviction.

## II.     The Sentencing Issues.

We limit our review of the sentencing issues to determining whether the district court clearly erred in any of its factual findings, or misapplied the Sentencing Guidelines. See Brown v. United States, 169 F.3d 531, 532 (8th Cir. 1998).

### A. The § 2K2.1(b)(5) Enhancement.

Letts argues that the district court clearly erred in enhancing his sentence four levels on the grounds that the firearms were possessed "in connection with" another felony offense. U.S.S.G. § 2K2.1(b)(5). Letts contends that insufficient evidence connected the guns to the meth lab.

In United States v. Regans, 125 F.3d 685 (8th Cir. 1997), we equated § 2K2.1(b)(5)'s reference to "in connection with" to the "in relation to" language of 18 U.S.C. § 924(c)(1).  See Regans, 125 F.3d at 686.  The Supreme Court has explained that

> [t]he phrase "in relation to" thus, at a minimum, clarifies that the firearm must have some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence . . . Instead, the gun at least must "facilitat[e], or ha[ve] the potential of facilitating," the drug trafficking offense.

Smith v. United States, 508 U.S. 223, 238 (1992).

In this case, the government established Letts's connection to the meth lab through Scott Hambly.  Hambly told law enforcement officers that the meth lab belonged to Letts (the lab was, after all, on Letts's property).  In addition, Hambly said that Letts allowed others to use the lab as long as he received some of the finished product.  The government also argued that the firearms discovered on Letts's property were connected to the meth lab.  Letts had several weapons in his garage, which also contained equipment and ingredients for manufacturing meth, as well as two containers with user amounts of meth.  The government points out that "[a]ll of the firearms seized from outside of the house were present, near, or at parts of the methamphetamine laboratory where they could have been used to protect the defendant's laboratory, and were easily obtainable if necessary."

Although thin, the government's evidence shows that the firearms at least had the potential of facilitating the manufacture of meth.  Cf. United States v. McClain, 171 F.3d 1168, 1171 (8th Cir. 1999) (upholding an enhancement under § 2K2.1(b)(5) where defendant, while in close proximity to a meth lab, tossed a pistol into the back of his truck just prior to being arrested for attempt to manufacture meth); United States v. Johnson, 60 F.3d 422, 423 (8th Cir. 1995) (upholding an enhancement under §

2K2.1(b)(5) where a loaded pistol was found in the same room where drugs and drug paraphernalia belonging to the defendant were kept, and the defendant had taken both the loaded pistol and the drugs with him to get a cheeseburger just prior to his arrest); United States v. Condren, 18 F.3d 1190, 1197-1200 (5th Cir. 1994) (upholding an enhancement under § 2K2.1(b)(5) where the firearm was merely present in a location near the drugs where it could be used to protect them).  We cannot conclude that the district court clearly erred in applying a four level adjustment under § 2K2.1(b)(5).

## B. The § 2K2.1(b)(2) Lawful Sporting Purposes or Collection Exception.

Finally, Letts argues that the district court clearly erred in refusing to adjust his sentence six levels downward on the grounds that he possessed the firearms solely for lawful sporting purposes or collection.  Letts has the burden of proving that the exception should apply.  See United States v. Dinges, 917 F.2d 1133, 1135 (8th Cir. 1990).

We find no clear error in the district court's finding that the fifty-five firearms did not constitute a collection.  Letts kept several of the firearms loaded.  In addition, officers found the weapons in various and sundry places (a garage, an outbuilding, and at least four separate areas of the residence) rather than together as a collection.

Likewise, we find no clear error in the district court's finding that Letts did not possess the firearms solely for lawful sporting purposes.  We note that one of the firearms was an SKS assault rifle equipped with a flare launcher.

We affirm the judgment of conviction and sentence in all respects.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.