UNITED STATES of America, Appellee,

v.

**Douglas A. WILSON, Appellant.**

No. 94–2185.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 29, 1994.

Decided Dec. 5, 1994.

Francis C. Hoyt, West Des Moines, IA, for appellant.

Stephen Patrick O'Meara, Des Moines, IA, for appellee.

Before WOLLMAN, BEAM, and HANSEN, Circuit Judges.

PER CURIAM.

Douglas A. Wilson pleaded guilty to mail fraud, in violation of 18 U.S.C. §§ 1341 and 2; theft of United States property, in violation of 18 U.S.C. §§ 641 and 2; and embezzlement, in violation of 18 U.S.C. § 664. Wilson appeals his sentence, arguing that the district court [1] improperly calculated his Guidelines sentencing range. We affirm Wilson's sentence.

Wilson is the former president of Wilson Railway Corp., a corporation that bought, rebuilt, and sold used locomotives. Wilson, on behalf of the corporation, entered into a joint venture with James Snider in August 1988. Wilson agreed to find, rebuild, and market used locomotives while Snider agreed to provide the financing. Snider was to take title to the locomotives, and Wilson was to make loan payments and pay Snider a commission on locomotives bought with loan proceeds. Snider borrowed money from two different banks to fund the purchase of locomotives. The banks made the loans with full understanding of the joint venture, and took a security interest in the locomotives purchased with loan proceeds. (R. at 23–27; PSR ¶ 15; Appellant's Br. at 2.)

From about April 1989 until at least March 1992, Wilson engaged in a number of fraudulent acts. Wilson falsely told Snider that he had not been paid for certain locomotives Wilson had purchased with loan proceeds and sold to third parties. Wilson also told Snider that he had purchased locomotives with loan

proceeds, when in fact he had not, and he induced Snider to pledge locomotives neither he nor Snider owned as collateral to obtain more financing from one of the banks. (R. at 34–39; Gov't's Br. at 2–3.) Wilson also obtained a loan from a third bank in July 1990, which the bank secured with locomotives Wilson purported to own free and clear of any other claims. (R. at 28–29.) Wilson defrauded other entities, including the Internal Revenue Service, during the course of his offenses.

After grouping together the three offenses to which Wilson pleaded guilty, the district court calculated a total offense level of 24, a criminal history category of I, and a sentencing range of 51 to 63 months. (PSR at ¶¶ 38–49, 55, 83; Sent.Tr. at 33.) The court sentenced Wilson to 60 months' imprisonment and three years' supervised release. It also ordered him to pay a total of $3,425,906.13 in restitution to his victims. Of that amount, $1,027,307 was payable to the banks, and $337,650 was payable to Snider. (R. at 58.)

Wilson's sole argument on appeal is that the district court improperly enhanced his sentence by four levels under U.S.S.G. § 2F1.1(b)(6)(B). Section 2F1.1(b)(6) provides that, if the defendant's offense

(A) substantially jeopardized the safety and soundness of a financial institution; or

(B) affected a financial institution and the defendant derived more than $1,000,000 in gross receipts from the offense,

increase by 4 levels. If the resulting offense level is less than level 24, increase to level 24.

■ Wilson does not contend that he derived less than $1,000,000 from his offense, or that his offense did not affect a financial institution. Rather, he argues that subsection (B) is aimed at major bank crimes involving a threat to the safety and soundness of a financial institution, and thus does not apply in his case. The government concedes

---

1. The Honorable Charles R. Wolle, Chief Judge, United States District Court for the Southern District of Iowa.

that the record has no facts showing Wilson substantially jeopardized the safety and soundness of the financial institutions involved, but argues that the court properly enhanced Wilson's sentence under ·the plain language of subsection (B).

 We review the district court's application of the Guidelines de novo. *United States v. Washington,* 17 F.3d 230, 234 (8th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 153, 130 L.Ed.2d 92 (1994). We agree with the government that Wilson's interpretation of section 2F1.1(b)(6)(B) essentially treats the disjunctive "or" between subsections (A) and (B) as an "and." Terms connected by "or," however, normally are read to have separate meanings and significance. *See United States v. Lawrence,* 915 F.2d 402, 407 (8th Cir.1990); *United States v. Smeathers,* 884 F.2d 363, 364 (8th Cir.1989) (per curiam).

Wilson has not shown that a disjunctive reading of subsections (A) and (B) would frustrate a clear statement of legislative intent. *See Smeathers,* 884 F.2d at 364 (general rule of construction must yield when disjunctive reading would frustrate clear statement of legislative intent). He argues that the Commission promulgated subsection (B) in response to legislation entitled "Increased Penalties in Major Bank Crime Cases," but the legislation simply directed the Commission to provide for an enhanced Guidelines sentence when a defendant was convicted of violating one of various statutes covering financial-institution-related fraud offenses, or "[18 U.S.C. §§] 1341 or 1343 affecting a financial institution," if the defendant derived more than $1,000,000 in gross receipts from the offense. Pub.L. No. 101–647, § 2507, 104 Stat. 4862 (1990); U.S.S.G. § 2F1.1, comment. (backg'd). The legislation contains no qualification indicating that Congress sought to punish such conduct only when the safety and soundness of a financial institution was jeopardized. This is not surprising, since section 2F1.1(b)(6) already covered conduct

involving jeopardy to a financial institution— the language now contained in subsection (A).[2] *See United States v. Kopshever,* 6 F.3d 1218, 1221 (7th Cir.1993) (recognizing that subsection (B) expanded section 2F1.1(b)(6) and that test in subsection (A) is more demanding than that in subsection (B)).

Because we see no reason to deviate from a plain-meaning reading of subsection (B), we conclude that the district court properly assessed the four-level enhancement under the facts of this case.

The judgment is affirmed.

2. Before subsection (B) was added on November 1, 1991, section 2F1.1(b)(6) provided:

If the offense substantially jeopardized the safety and soundness of a financial institution, increase by **4** levels. If the resulting offense level is less than level **24**, increase to level **24**.