UNITED STATES of America, Appellant,

v.

**Ivory MOSBY, also known as Rafiz Zareef Muhaymin, Appellee.**

No. 95–1510.

United States Court of Appeals,
Eighth Circuit.

Submitted May 18, 1995.

Decided July 13, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied Sept. 8, 1995.*

Kenneth Wayne Saffold, Minneapolis, MN, argued (David L. Lillehaug, U.S. Atty., on the brief), for appellant.

Daniel M. Scott, Minneapolis, MN, argued (Virginia G. Villa, Minneapolis, MN, on the brief), for appellee.

Before BOWMAN, MAGILL, and LOKEN, Circuit Judges.

MAGILL, Circuit Judge.

This is an appeal by the United States from a judgment of acquittal. Ivory Mosby, now known as Rafiz Zareef Muhaymin, was charged with violating 18 U.S.C. § 922(g)(1)

* McMillian, Beam and Morris Sheppard Arnold, Circuit Judges, would grant the suggestion for rehearing en banc.

by "possess[ing], in or affecting commerce, ... ammunition" after he had been convicted of a felony. Because we find that the district court misconstrued § 922(g)(1) by imposing an unjustified limitation on the type of "commerce" that Mosby's possession must be "in or affecting," we reverse and remand for entry of judgment on the jury's verdict.

## I. BACKGROUND

The parties are in agreement as to the facts. Mosby is a convicted felon. He was found in Minnesota in possession of eighty-nine .44 caliber Remington Peters cartridges that were manufactured in Minnesota from out-of-state components, and he was charged with violating 18 U.S.C. § 922(g)(1), which provides:

It shall be unlawful for any person—

(1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;

. . . .

to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

Mosby went to trial and a jury returned a guilty verdict. Mosby then moved for judgment of acquittal on the basis that the government had failed to prove that he possessed ammunition "in or affecting commerce." The district court granted Mosby's motion, and the government timely appeals.

## II. DISCUSSION

This case differs from the typical prosecution under § 922(g). In the typical case, there is evidence that the ammunition or firearm is manufactured out-of-state, from which it is inferred that it traveled in interstate commerce from its out-of-state point of manufacture to the in-state point of possession. This circuit has repeatedly held evidence of this type to be sufficient to establish the interstate commerce element necessary to sustain a § 922(g) conviction. *See, e.g., United States v. Washington,* 17 F.3d 230, 232–33 (8th Cir.) (expert testimony that

weapon labeled "Central Arms Company, St. Louis, Missouri" was manufactured outside Missouri for sale to Shapley Hardware in St. Louis, which used label, and that no arms have been manufactured in Missouri, and opinion that firearm was manufactured outside Missouri sufficient to establish interstate commerce element where possession occurred in Missouri), *cert. denied,* —— U.S. ——, 115 S.Ct. 153, 130 L.Ed.2d 92 (1994); *United States v. Cox,* 942 F.2d 1282, 1286 (8th Cir.1991) (testimony that weapon was manufactured by Colt, which does not manufacture weapons in Missouri, sufficient to establish interstate commerce element where possession occurred in Missouri), *cert. denied,* 503 U.S. 921, 112 S.Ct. 1298, 117 L.Ed.2d 520 (1992); *United States v. Rodriguez,* 915 F.2d 397, 399 (8th Cir.1990) (purchase in California of gun manufactured in Michigan sufficient to establish interstate commerce element where possession occurred in North Dakota); *United States v. Roberts,* 859 F.2d 593, 594–95 (8th Cir.1988), *cert. denied,* 489 U.S. 1059, 109 S.Ct. 1327, 103 L.Ed.2d 595 (1989). However, the cartridges possessed by Mosby were both manufactured and possessed entirely within the State of Minnesota.

The parties have identified, and we have discovered, only one case involving a prosecution under this section where the charged possession and manufacture occurred entirely within a single state. *United States v. Travisano,* 724 F.2d 341 (2d Cir.1983), was a prosecution under the firearms portion of § 1202, the predecessor of § 922(g)(1). In *Travisano,* the district court dismissed the count of the indictment that charged a violation of § 1202 on the basis that the required nexus to interstate commerce was lacking. In *Travisano,* the previously-convicted felon possessed, in Connecticut, a shotgun that was manufactured in Connecticut. The government "conceded that it cannot establish that the firearm travelled in interstate commerce after its manufacture." *Id.* at 347. The government sought remand for a hearing on the issue whether the process of manufacturing the shotgun affected commerce. The Second Circuit affirmed the dismissal of the § 1202 charge and refused to remand the case for the hearing sought by the govern-

ment because Travisano did not possess the shotgun "in or affecting commerce in previously manufactured shotguns," and nothing produced at the hearing could affect this determination.

■ The government purports to distinguish *Travisano* on the basis that *Travisano* involved a firearm whereas this prosecution involves ammunition. According to the government, *Travisano* is inapposite because the definition of "firearm" contained in § 1202(c)(3), now § 921(a)(3),[1] is narrower than the definition of ammunition in that the definition of "firearm" does not include firearm components that are not themselves capable of expelling a projectile whereas the definition of ammunition is not similarly restricted. We reject the government's proposed distinction for two reasons. First, the government misreads § 1202(c)(3)'s definition of "firearm." The limitation identified by the government is found only in the first clause of the definition. The limitation is omitted from the latter clauses, and does not appear to modify them. Moreover, even if the definition of "firearm" does not include all components as the government claims, it certainly includes some components of the firearm (namely, the receiver and the frame). The definition of "ammunition" found in § 921(a)(17)(A)[2] is similar in that listed components of a cartridge (*i.e.*, the cartridge case, bullet, primer and powder) are considered "ammunition." Thus, we do not find the government's attempt to distinguish *Travisano* to be persuasive.

1.  This section provides:
    The term 'firearm' means (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm.

2.  This section provides: "The term 'ammunition' means ammunition or cartridge cases, primers, bullets, or propellent powder designed for use in any firearm."

3.  *Lopez* delineates three categories of activity that Congress may regulate under its commerce power. First, "Congress may regulate the use of the channels of interstate commerce." *Id.,* —— U.S. at ——, 115 S.Ct. at 1629. Second, Con-

■ However, although it is not distinguishable, *Travisano* is not binding on this Court. We believe that *Travisano* takes an unjustifiedly narrow view of the relevant commerce for the purpose of determining whether the firearm (or ammunition) was possessed "in or affecting commerce." *Travisano* essentially adds two qualifiers to the term "commerce" by adding the words "in previously manufactured firearms" to limit "commerce" as it appears in § 922(g)(1). We reject these two implied restrictions. First, we reject *Travisano*'s construction of § 922(g)(1) that limits the commerce that Mosby's possession must be "in or affecting" to commerce in ammunition (or, as was the case in *Travisano,* firearms). Second, we reject *Travisano*'s exclusion of commerce in the component parts of the charged firearm or ammunition from the relevant commerce for purposes of determining whether the charged possession was "in or affecting commerce."

■ The phrase "in or affecting commerce" is a term of art that indicates a congressional intent to invoke the full extent of its commerce power. *United States v. Sanders,* 35 F.3d 61, 62 (2d Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 497, 130 L.Ed.2d 407 (1994). Although the recent Supreme Court decision in *United States v. Lopez,* —— U.S. ——, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), limits Congress's exercise of its commerce power, that power remains broad enough to support application of § 922(g)(1) in this case.[3]

gress may "regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities." *Id.* Third, Congress may "regulate those activities having a substantial relation to interstate commerce." *Id. Lopez* struck down § 922(q)(1)(A), a regulation that fell in the third category, because the regulated activity did not "substantially affect" interstate commerce, and Congress had, therefore, exceeded its commerce power when it attempted to regulate that activity. However, the "in or affecting" language in § 922(g) makes clear that an individual case may fall into either the second or third category. On the facts of this case, because the components of the ammunition are *in* interstate commerce, we are dealing with a regulation that falls within the second category.

457

Mosby was charged with violating § 922(g)(1) by "possess[ing] in or affecting commerce, ... ammunition." The district court interpreted § 922(g)(1) to require proof that Mosby "possess[ed] in or affecting commerce **in ammunition, ...** ammunition." The district court then coupled this reading of § 922(g)(1) with an interpretation of § 921(a)(17) that included only assembled cartridges. The district court reviewed the text and legislative history of § 921(a)(17) and § 922(g)(1), and emphasized the fact that the definition of "ammunition" in § 921(a)(17) is phrased in the disjunctive ("ammunition [*i.e.,* completed cartridges] *or* cartridge cases, primers, bullets or propellant powder"). The import of the disjunctive is well established. Terms connected by "or" normally are read to have separate meanings. *See, e.g., United States v. Wilson,* 41 F.3d 399, 401 (8th Cir.1995). The government provided evidence that the components of the cartridges are from outside the State of Minnesota. However, the district court granted Mosby's motion for judgment of acquittal because the government had not shown that Mosby possessed "in or affecting commerce **in previously manufactured cartridges, ...** cartridges." In so doing, the district court failed properly to consider the linguistic structure of § 922(g)(1) and overemphasized the importance of the disjunctive definition in § 921(a)(17).

Section 922(g)(1) contains the term "ammunition" only one time. This term identifies the item(s) that must be possessed. It does not modify or limit the commerce that must be affected by this possession. Section 922(g)(1) contains no phrase between the word "commerce" and the comma. The term "commerce" is unmodified (except insofar as it is a term of art referring to interstate commerce). Thus, we believe that the appropriate reading of § 922(g)(1) is:

> possess[ed] in or affecting commerce **of any type,** ... ammunition (*i.e.,* completed cartridges *or* cartridge cases, primers, bullets or propellant powder).

Given the linguistic structure of § 922(g)(1), the fact that the disjunctive "or" is used in § 921(a)(17) does not mean that cartridge components are excluded from the definition of the relevant commerce under § 922(g)(1). The unmodified term "commerce" as used in § 922(g)(1) means exactly what it says—commerce of any type—and the district court misconstrued § 922(g)(1) when it limited "commerce."

Mosby possessed "ammunition" in two senses. Mosby's possession of the assembled cartridges, which are not in interstate commerce, is also possession of the individual components of the cartridges which are in interstate commerce. At least some of these components satisfy the definition of ammunition in § 921(a)(17). Thus, Mosby's possession of these components is possession "in ... commerce, ... [of] ammunition." Thus, because we hold that Mosby's possession of completed cartridges is a possession of cartridge components that satisfy the definition of ammunition in § 921(a)(17), and that are in interstate commerce, we conclude that Mosby possessed ammunition in interstate commerce in violation of § 922(g)(1).

### III. CONCLUSION

Because we hold that the district court construed "commerce" in an overly narrow fashion, we reverse the district court's grant of Mosby's motion for judgment of acquittal and remand for entry of judgment in accordance with the jury verdict.