United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 29, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————

No. 03-51274

———————————

UNITED STATES OF AMERICA,

                                    Plaintiff-Appellee,

         versus

EUGENE CHAMBERS, III, also known as Gino,

                                    Defendant-Appellant.

———————————

Appeal from the United States District Court
for the Western District of Texas

———————————

Before GARWOOD, JONES, and PRADO, Circuit Judges.

GARWOOD, Circuit Judge:

    Eugene Chambers, III (Chambers) appeals his conviction under 18 U.S.C. § 922(g)(1) for being a felon in possession of ammunition.  We reverse his conviction and remand to the district court with instructions to dismiss that count of the indictment.

1

## Facts and Proceedings Below

Chambers, along with two co-defendants, stood trial in June of 2003 on a 20-count superceding indictment that alleged an elaborate drug conspiracy and other related crimes.  Chambers was charged in five counts of the indictment, namely in one count of conspiracy, from January 1998 to August 2002, to manufacture and distribute more than 50 kilograms of cocaine base, in two counts of aiding and abetting the distribution of cocaine base on, respectively, October 9 and November 17, 2001, in one count of conspiracy, from January 1998 to August 2002, to launder money, and, finally, in count 19, with being a felon in possession of ammunition on or about August 8, 2002, contrary to section 922(g)(1).  The money laundering conspiracy count was dismissed before the case was submitted to the jury.  The jury on July 1, 2003 returned a verdict of not-guilty as to three drug counts but found Chambers guilty of Count 19, the ammunition count.

With respect to Chambers' conviction, the evidence at trial established the following.  First, Chambers was a convicted felon. Second, although the only evidence on the subject indicated that the ammunition belonged to Chambers' father and had been inadvertently included among Chambers' things when he moved out of his father's San Antonio apartment, Chambers was aware of the ammunition's presence in his new home.  Finally, the ammunition in question, as alleged in the indictment, consisted of "104 rounds of

2

.40 caliber S&W jacketed hollow-point ammunition, distributed by Houston Cartridge Company." The authorities discovered the rounds at Chambers' new residence while executing a search warrant there connected to the drug investigation. The ammunition was visible in a box in a pantry-like closet in the apartment Chambers shared with his fiancee in San Antonio, Texas. Other than a few unidentified rounds, the ammunition was in its original packaging and the evidence established that it was manufactured by the Houston Cartridge Company in Willis, Texas, just outside of Houston, Texas. Jim Butz, the owner of Houston Cartridge Company, testified that he produces, in Texas, completed rounds, using brass (cartridge cases) from Texas and sometimes from Colorado, bullets (projectiles) from Texas, South Dakota and Montana, powder from Tennessee, and primers from South Dakota. Houston Cartridge Company sold the rounds it produced at various places, including gun shows in San Antonio and other Texas locations. There is no evidence that any of the completed rounds found in Chambers' apartment, as opposed to some of their components, had ever moved in interstate commerce.[1]

At the close of the government's case in chief Chambers moved for judgment of acquittal under Rule 29(a), FED. R. CIV. P., as to the ammunition count on the ground that there was "not evidence that the ammunition which was manufactured in Houston was in

---

[1] There is no evidence as to either the source or any interstate movement of any of the few rounds (or any components thereof) found in the closet at Chambers' residence which were not identified as Houston Cartridge Company rounds.

3

interstate commerce" and that to look to some of the component parts "is a constructive amendment to the indictment, which is improper." The district court denied the motion. At the close of all the evidence, Chambers renewed his Rule 29(a) motion and the district court again denied it.

The court instructed the jury that to convict on the ammunition count it had to find "that the possession of the ammunition was in and affecting commerce, that is that before the defendant possessed the ammunition, it had travelled at sometime from one state to another," and, over Chambers' objection (9 R. 754-56; 10 R 1211-12), that "[t]he term ammunition means ammunition or cartridge cases, primers, bullets or propellant powders designed for use in any firearm." In both its opening and rebuttal closing arguments the government, expressly relying on this instruction, contended that the "in and affecting commerce element" of the ammunition count was proven by the evidence that "the components, before they were assembled, crossed state lines" and "the components moved in interstate commerce before it was assembled . . . ammunition includes the components, as the judge told you." The government did not argue there was any evidence that any of the completed rounds alleged in the indictment had moved in interstate commerce. Chambers' counsel argued that though some components of the completed rounds may have traveled in interstate commerce, the completed rounds themselves did not.

4

After the jury returned its verdict on July 1, 2003 finding Chambers guilty of the ammunition count and not guilty of the other counts with which he was charged, Chambers timely moved under Rule 29(c) for judgment of acquittal as to the ammunition count on the ground that there was no evidence any of the "104 rounds of .4o caliber . . . ammunition, distributed by the Houston Cartridge Company . . . had been transported in interstate commerce" as alleged in the indictment, and that conviction could not rest on evidence that some component parts had separately moved in interstate commerce before being assembled into such rounds as that would constitute a constructive amendment of the indictment contrary to *United States v. Stirone*, 80 S.Ct. 270 (1960). This motion was denied.

Chambers was subsequently sentenced to 235 months' imprisonment to be followed by five years of supervised release.

In his timely appeal to this court, Chambers contends, *inter alia*, that the evidence is insufficient to support his conviction because there is no evidence that his possession of ammunition was "in and affecting" commerce as alleged in the indictment in that none of the completed rounds charged in the indictment were shown to have moved in interstate commerce, and that his conviction may not be sustained on evidence that some component parts of those rounds had traveled interstate before Houston Cartridge Company assembled them into the completed rounds, as that would constitute

5

a constructive amendment of the indictment.[2]

## Discussion

Count 19 of the indictment alleges that

"On or about August 8, 2002, in the Western District of Texas, Defendant, Eugene Chambers, III, having been convicted of a crime punishable by imprisonment for a term exceeding one year did knowingly possess in and affecting commerce ammunition, to wit: 104 rounds of .40 caliber S&W jacketed hollow-point ammunition, distributed by the Houston Cartridge Company, which had been transported in interstate commerce, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2)."

Section 922(g)(1) provides in relevant part that

"It shall be unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

Section 917(a)(17)(A) of Title 18 provides that "[a]s used in this chapter" (chapter 44, which consists of sections 921-931):

"The term 'ammunition' means ammunition or cartridge cases, primers, bullets, or propellant powder designed for use in any firearm."

It is plain that the word "ammunition" as it appears just following "means" in section 917(a)(17)(A) refers to completed

---

[2]  Our disposition of this contention makes it unnecessary to address Chambers' other points of error, including his contention that as applied here the component parts definition of ammunition (18 U.S.C. § 917(a)(17)(A)) exceeds Congress's Commerce Clause power.  We assume, *arguendo*, no exceeding of Commerce Clause power in the instant conviction.

rounds. Substituting the section 917(a)(17)(A) definition into section 922(g)(1), the latter statute would read in relevant part as follows:

> "It shall be unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess in or affecting commerce, any firearm or ammunition [i.e., completed rounds] or cartridge cases, primers, bullets, or propellant powder designed for use in any firearm."

An essential element of a section 922(g)(1) possession of ammunition offense, which the government is required to prove beyond a reasonable doubt in order to obtain a conviction, is that the defendant's charged possession of the ammunition was "in or affecting commerce." *United States v. Ybarra*, 70 F.3d 362, 365 (5th Cir. 1995).

Here, the indictment, which makes no mention of cartridge cases, primers, bullets or powder, is unambiguous and plainly alleges one, and only one, factual basis constituting the "in or affecting commerce" element of the offense, namely that the possessed "rounds of .40 caliber S&W . . . ammunition, distributed by the Houston Cartridge Company . . . had been transported in interstate commerce." However, the government presented no evidence that these rounds had been transported in interstate commerce as the indictment alleged. Rather, the only "in or affecting commerce" proof was that, in the process of its Texas assembly of the complete rounds Houston Cartridge Company

7

incorporated into them previously acquired powder from Tennessee, primers from South Dakota and bullets (projectiles) from Montana.[3] The government thus proved an essential element of the section 922(g)(1) possession offense – that the possession was "in or affecting commerce" – on the basis of a set of facts different from the particular facts alleged in the indictment in respect to that element.

The government contends that at most there was a harmless variance, not a constructive amendment of the indictment. However, as we said in *United States v. Adams*, 778 F.2d 1117, 1123 (5th Cir. 1985):

> "*Stirone* requires that courts distinguish between constructive amendments of the indictment, which are reversible *per se*, and variances between indictment and proof, which are evaluated under the harmless error doctrine. *The accepted test is that a constructive amendment of the indictment occurs when the jury is permitted to convict the defendant upon a factual basis that effectively modifies an essential element of the*

---

[3] The evidence shows Houston Cartridge Company acquired some of its casings ("brass") "locally" and some from a supplier in Dallas (there was no evidence of where the supplier got them) and some from Colorado. There was no estimate of the fraction of casings from any of the three sources nor any other evidence which would allow the jury to find beyond a reasonable doubt that the casings on any of the rounds in question had traveled in interstate commerce.

With respect to the bullets (projectiles), Butz of Houston Cartridge Company testified that he acquired jacketed bullets from South Dakota or Montana, but the lead projectiles "I buy locally." He also testified that of the rounds found in Chambers' residence "the full metal jacket ammunition is not mine." However, when then asked "if that's your ammunition . . . those bullets came from South Dakota or Montana," he responded "Those came from Montana."

*offense charged* [in the indictment]. . . . In such cases, reversal is automatic, because the defendant may have been convicted on a ground not charged in the indictment." (emphasis added).

*Stirone* is directly analogous. There the defendant was charged and convicted of extortion in violation of the Hobbs Act, 18 U.S.C. § 1951, which denounces "[w]hoever in any way or degree obstructs, delays, or affects commerce . . . by robbery or extortion or attempts or conspires so to do." The indictment alleged that the victim, Rider, had a contract to supply concrete from his Pennsylvania plant to be used in the construction of a steel processing plant in Pennsylvania, and that to perform his contract Rider caused supplies and materials to be shipped from outside of Pennsylvania to his Pennsylvania plant.

The Supreme Court noted that:

"The indictment went on to charge that Stirone, using his influential union position, 'did . . . unlawfully obstruct, delay [and] affect interstate commerce between the several states of the United States and the movement of the aforesaid materials and supplies in such commerce, by extortion . . . of $31,274.13 . . . inducted by fear and by the wrongful use of threats of labor disputes and threats of the loss of, and obstruction and prevention of, performance of his contract to supply ready mixed concrete.'" *Id*., 80 S.Ct. at 271.

The district court, over objection, permitted "evidence of an effect on interstate commerce not only in sand brought into Pennsylvania from other states but also in interference with steel shipments from the steel plant in Pennsylvania into Michigan and Kentucky", *id*., and permitted the jury to find the requisite

9

commerce element on either basis. *Id*. at 272. The Court of Appeals affirmed the conviction, holding that the evidence was sufficient to satisfy that element under either theory, and that although the indictment did not allege an effect on commerce on the basis of steel shipments that amounted only to "a variance," which did not require reversal as the defendant clearly was not surprised and did not object on the basis that such evidence went beyond the indictment. *United States v. Stirone*, 262 F.2d 571, 574 (3d Cir. 1959).

The Supreme Court reversed. It noted that the Hobbs Act's "in any way or degree" language manifested an intent "to use all the constitutional power Congress has to punish interference with interstate commerce by extortion," and that the evidence was sufficient as to the sand shipped into Pennsylvania. *Stirone* at 272. The Court assumed, *arguendo*, that the evidence was sufficient as to the steel shipments. *Id*. The Court did not dispute the Court of Appeals' determination that the accused was not surprised, or prejudiced in his trial defense, by the evidence and instruction as to the steel, but held nevertheless, since that was not alleged in the indictment, that it

> ". . . destroyed the defendant's substantial right to be tried only on charges presented in an indictment returned by a grand jury. Deprivation of such a basic right is far too serious to be treated as nothing more than a variance and then dismissed as harmless error. . . . The very purpose of the requirement that a man be indicted by grand jury is to limit his jeopardy to offenses charged by a group of his fellow citizens acting independently of

10

either prosecuting attorney or judge. Thus the basic protection the grand jury was designed to afford is defeated by a device or method which subjects the defendant to prosecution for interference with interstate commerce which the grand jury did not charge." *Id*. at 273-74 (footnote omitted).

The Court concluded in words fully applicable here:

". . . when only one particular kind of commerce is charged to have been burdened a conviction must rest on that charge and not another, even though it be assumed that under an indictment drawn in general terms a conviction might rest upon a showing that commerce of one kind or another had been burdened." *Id*. at 274.

We note that in *Stirone* there was no departure from the indictment in respect to what the defendant did, or when, where or to whom he did it, or what his conduct immediately threatened, namely Rider's contract to supply concrete to the steel plant construction job. Nor was there any departure from the indictment so as to allow conviction under any different language segment or portion of the statute alleged in the indictment.

Following *Stirone* we have found constructive amendments in a number of analogous contexts.

In *Adams*, a prosecution under 18 U.S.C. § 922(a)(6), proscribing the knowing furnishing, in connection with the purchase of a firearm from a dealer, of "false, fictitious, or misrepresented identification," the indictment alleged that the defendant Adams

"in connection with his acquisition of a firearm . . . from . . . a licensed dealer, did knowingly furnish . . . a false, fictitious and misrepresented identification, that is, a Mississippi Driver's License Number XXX-XX-

11

7243, to the firearms dealer, which identification was likely to deceive the firearms dealer with respect to a fact material to the lawfulness of the acquisition of the firearm by [defendant] . . . in that [defendant] represented that he was Ernest Cole, whereas, in truth and in fact, as he then well knew, he was Ernest Adams . . . ."

The driver's license identified in the indictment, which was placed in evidence, was in the name of Ernest Cole and showed an address in Meridian, Mississippi, although Adams's residence was actually in Detroit, Michigan. We held it error to allow conviction on the basis that the driver's license was false as to either the name or the address on it, although the evidence would sustain either, and that the allegation as to the falsity of the name could not be disregarded as surplusage. Citing *Stirone* we stated:

"when only one particular kind of falsity is charged to have been made in furnishing a license, a conviction must rest on that charge and not another, even though a conviction might have rested on a more general indictment that omitted the reference to Ernest Cole."

Other decisions of this court are to like effect. *See United States v. Davis*, 461 F.2d 83, 90-91 (5th Cir. 1972) (conspiracy to violate 18 U.S.C. § 1708 which "proscribes the possession of mail matter which has been stolen 'from or out of any mail, post office, . . . letter box, . . . mail receptacle, . . . or other authorized depository for mail matter;'" where indictment alleged letters, contents of which defendants conspired to unlawfully possess knowing they were stolen, had been "stolen . . . out of an authorized depository for mail matter," but the evidence did not

12

show letters were taken from "an authorized depository for mail matter" as alleged, conspiracy conviction reversed, even though evidence showed a violation of section 1708 in that the letters were unlawfully taken from the "mail," "[s]ince the Government chose to charge a section 1708 violation in a particular manner, we hold that in any conviction pursuant to that indictment the prosecution is bound by the particular allegations contained therein and it cannot obtain a conviction by proof of a violation of the same statute in a manner not alleged"); *United States v. Salinas*, 601 F.2d 1279, 1287-91 (5th Cir. 1979) (convictions for, *inter alia*, violations of 18 U.S.C. § 656 (and aiding and abetting) which proscribes misapplication of bank funds by "an officer, director, agent or employee of . . . any . . . insured bank;" in several of the section 656 counts the indictment alleged the respective capacities of the appellants with respect to the victim bank, that Woodul was president and Salinas and Sanchez were each a director, no other office or position in or with the bank of any of the appellants being alleged in such counts; it was undisputed at trial that Woodul was president and Sanchez a director at all the relevant times; the trial court instructed the jury that it could find the required relationship of each appellant to the victim bank under these section 656 counts if it found "that the defendant was an 'officer, director, agent, or employee'" of the bank; we held that this was a constructive amendment of the

13

indictment requiring reversal of these counts under *Stirone* as it allowed the finding of an element of the section 656 offense on a factual basis not alleged in the indictment); *United States v. Bizzard*, 615 F.2d 1080 (5th Cir. 1980) (conviction for violating 18 U.S.C. § 2113(d) denouncing whoever in committing bank robbery "assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon;" indictment alleged that in robbing bank defendants "put in jeopardy the life of . . . by means and use of a dangerous weapon, that is, a pistol;" held that instruction allowing jury to convict on basis of "assault" in committing bank robbery constituted a constructive amendment of the indictment, contrary to *Stirone*); *United States v. Salinas*, 654 F.2d 319, 323–35 (5th Cir. 1981)[4] (conviction for aiding and abetting 18 U.S.C. § 656 violation alleged in the indictment to have been committed by Woodul, as bank president, in authorizing a specifically described improper loan to a specifically described customer, reversed because by his jury charge "allowing the jury to convict if it found that the principal whom Salinas aided and abetted was an officer, director, employee, or agent of the bank when the indictment charged him only with aiding and abetting a specific named individual, Woodul, the trial judge modified an essential element of the offense" contrary to *Stirone*); *United States v.*

---

[4] Overruled in other respects, *United States v. Adamson*, 700 F.2d 953, 965 n.18 (5th Cir. en banc, 1983).

*McRary*, 665 F.2d 674, 679 (5th Cir. 1982) (indictment charging kidnaping under 18 U.S.C. § 1221 alleged the victim was "transported in foreign commerce;" the evidence showed the transportation was not in foreign commerce but was rather within the "high seas jurisdiction" also specified in section 1221; conviction reversed because "[t]he substitution at trial of a new element of the offense (high seas jurisdiction) for the one contained in the indictment (foreign commerce) is a fatal variance between the indictment and the proof. *See, e.g., United States v. Stirone . . .*"); *United States v. Mize*, 756 F.2d 353, 355 (5th Cir. 1985) (conviction under 18 U.S.C. § 656 for misapplying funds of a bank which is a "Federal Reserve Bank, member bank, national bank or insured bank;" indictment alleged bank was a member bank; conviction may not be sustained on evidence that bank was an insured bank, as that would constitute a constructive amendment of the indictment contrary to *Stirone*); *United States v. Doucet*, 994 F.2d 169, 172 (5th Cir. 1993) (where indictment alleged possession of unregistered assembled machine gun, conviction may not be sustained on basis of possession of combination separate parts from which machine gun could be assembled, even though the relevant statute also included that in its definition of machine gun, as to do so would constitute constructive amendment of the indictment). *See also, e.g., United States v. Figueroa*, 666 F.2d 1375, 1377-80 (11th Cir. 1982); *United States v. Weissman*, 899 F.2d 1111 (11th

15

Cir. 1990); *United States v. Leichtnam*, 948 F.2d 370, 374-81 (7th Cir. 1991).

The government relies on our decisions in *United States v. Munoz*, 150 F.3d 401, 407, 416-17 (5th Cir. 1998), and *United States v. Robles-Vertiz*, 155 F.3d 725, 727-29 (5th Cir. 1998). Those cases are inapposite, however, because they deal with the situation where it is clear that the indictment and the evidence both refer to the same single actual set of facts constituting an element of the offense but the indictment misdescribes those facts in some particular that is both irrelevant to the element in question and does not tend to describe some actually separate set of facts not embraced within those reflected by the evidence. Thus, in *Munoz* the defendant was charged under section 922(g)(1) as a convicted felon in possession of a sawed-off shotgun (count II) and a pistol (count III), and was convicted of both counts. We rejected his contention that count II of the indictment was constructively amended because it alleged that the sawed-off shotgun was a 12 gauge, while the evidence showed it was a 20 gauge. That was nothing more than a misdescription of the same identical weapon. We distinguished *United States v. Leichtnam*, 948 F.2d 370, 374-80 (7th Cir. 1991), noting that "[u]nlike that case, the Government here only proffered one gun to substantiate the charge in count II." *Munoz*, 150 F.3d at 417 n.14. In *Leichtnam*, the only firearm count alleged the defendant did "use and carry a firearm, to wit:

16

a Mossberg rifle . . . during and in relation to . . . drug trafficking," but the evidence showed that the rifle and two handguns (along with drugs, drug paraphernalia, ledgers, and the like) were found in defendant's house and the jury charge authorized conviction on the basis of use or carrying "a firearm," without limiting it to the rifle. The Seventh Circuit reversed, holding that constituted a constructive amendment of the indictment, relying on *Stirone* and, among other decisions, those of our court in *Adams* and *Salinas* and of the Eleventh Circuit in *Weissman* and *Figueroa*.

*Robles-Vertiz* is inapposite for the same reason. There the defendant was charged with transporting an illegal alien. The evidence showed he was stopped by the border patrol while driving his car carrying a single passenger, an alien "woman named Anna Guerro, also known as Monica Martinez-Salazar." The indictment, however, alleged that the alien transported was "Monica Ramirez-Sanchez," and "no evidence was introduced concerning anyone named 'Monica Ramirez-Sanchez.'" *Id.*, 155 F.3d at 727. We rejected the contention that this amounted to a constructive amendment of the indictment, stating:

> ". . . here the error was merely one of transcription. Indeed, there is a common first name, and the surnames evince a certain phonetic congruity. The government was not . . . arguing a theory different from what it had alleged in the indictment. The change in names did not reflect a change in the alleged conduct.
> The error in the indictment was analogous to a spelling error. The government intended to name Anna

17

Guerrero, also known as Monica Martinez-Salazar, but through a mistake . . . government erroneously entered her name as Monica Ramirez-Sanchez.

Were 'Monica Ramirez-Sanchez' a person involved in Robles-Vertiz's smuggling scheme, this would be a different case. That is because the indictment would have been *broadened* – the prosecution could have secured a conviction by proving the smuggling of *either* woman. In that circumstance, the government would be prosecuting a theory that it had not presented to the grand jury."
*Id*. at 729 (footnote omitted).

Here, by contrast, the government seeks to uphold the interstate commerce element of the offense on the basis of facts – transportation of powder from Tennessee to Texas, of primer from South Dakota to Texas and of projectiles from Montana to Texas before any of those items were incorporated into any completed rounds – which facts are all wholly different than and distinct and separate from the only facts alleged in the indictment in respect to commerce, namely the necessarily subsequent transportation in interstate commerce of the completed rounds (as to which there was no evidence).

The government also relies on *United States v. Mosby*, 60 F.3d 454 (8th Cir. 1983), and *United States v. Danielson*, 199 F.3d 666 (2d Cir. 1999).

In *Mosby* the Eighth Circuit held that where the section 922(g)(1) indictment charged defendant, a felon, with "'possess[ing], in or affecting commerce, . . . ammunition,'" *id*. at 455, the verdict of guilty was supported by evidence that he possessed completed rounds the components of which came from

18

outside of the state of possession, although the completed rounds did not. However, there is nothing in the *Mosby* opinion to suggest that the indictment was other than wholly general, or that it ever alleged any particular facts respecting the "in or affecting commerce" element of the offense, or that it ever alleged anything respecting completed rounds. *Mosby* is hence inapposite as it addresses the situation spoken to in the italicized portion of the following passage from *Stirone*, viz:

> ". . . when only one particular kind of commerce is charged to have been burdened a conviction must rest on that charge and not another, *even though* it be assumed that *under an indictment drawn in general terms a conviction might rest upon a showing that commerce of one kind or another had been burdened*." *Id.*, 80 S. Ct. at 274 (emphasis added).

*See also Adams*, 778 F.2d at 1125.[5] *Cf. United States v. Williams*, 679 F.2d 504, 507-09 (5th Cir. 1982) (Hobbs Act indictment alleging interstate commerce effect only in conclusory terms is sufficient).

*Danielson* is more closely in point. There the opinion quotes the section 922(g)(1) indictment as alleging that the defendant

> ". . . 'did possess ammunition in and affecting commerce, and did receive ammunition which had been shipped and transported in interstate and foreign commerce, *to wit, 7 rounds of .45 calibre ammunition*.' (emphasis added)."

---

[5] *Adams* states(after quoting the above passage from *Stirone*): "Similarly, when only one particular kind of falsity is charged to have been made in furnishing a license, a conviction must rest on that charge and not another, *even though a conviction might have rested on a more general indictment that omitted the reference to Ernest Cole*." *Adams* at 1125 (footnote omitted).

19

*Id.*, 199 F.3d at 668.

The government's expert testified that the "exterior or brass shell casing (the 'shell')" on each of the seven completed rounds defendant was found in possession of in New York bore the stamp of the manufacturer of the completed round and reflected that the rounds had been manufactured in states other than New York and had traveled in interstate commerce. However, on cross examination the expert:

> "admitted that while the shells definitely traveled in interstate commerce into New York, it was possible that the rounds could have been 'reloaded' entirely in New York. In this process, a gun 'buff' could have saved money by refilling a spent shell with a new bullet, propellent powder, and primer." *Id* at 668-69.

The trial court, over defense objection, instructed in terms of the definition of ammunition contained in section 921(a)(17)(A). The Second Circuit rejected the defendant's claim that this constituted a constructive amendment of the indictment. It distinguished *Stirone* merely by stating that "the challenged deviation is so much less significant than the deviation[] that led to the overturning of the conviction[] in *Stirone*." *Danielson* at 670. We note that there are some at least arguably relevant differences between this case and *Danielson.* Chambers' indictment is clear in alleging that the "possess in or affecting commerce" element of section 922(g)(1) – the *only* commerce related portion of section 922(g)(1) charged here – consisted of the completed rounds "distributed by the Houston Cartridge Company" having been "transported in interstate

20

commerce." It is far less clear that the *Danielson* indictment charged possession "in or affecting commerce" on the basis that the completed rounds possessed had been transported in interstate commerce. The indictment there charged *both* the "possess in or affecting commerce any . . . ammunition" *and* the "receive any . . . ammunition which has been shipped or transported in interstate or foreign commerce" branches of section 922(g)(1), and all the "receive" allegations in *Danielson* can be read merely as additionally charging that latter branch of section 922(g)(1) rather than as a factual particularization of the "possess in or affecting commerce" branch also charged. Perhaps of greater significance, the *Danielson* indictment would be more comparable to that here had it alleged after its reference to the "7 rounds" something like "manufactured by Remington Peters" (the expert there identified "rounds marked 'RP' [as] . . . manufactured by Remington Peters in Arkansas"). And in *Danielso*n there was no allegation or evidence that the rounds actually were (or were not) reloaded rounds, while in this case the only allegation is that the rounds possessed were those distributed by Houston Cartridge Company and the evidence shows that (contrary to the allegation in the indictment) *such* rounds had *not* been transported in interstate commerce. In any event, we conclude that the result in *Danielson* cannot govern here consistent with *Stirone* and our above cited cases construing and applying it. Here, an essential element of

21

the offense is established on the basis of facts wholly different, separate and distinct from those particularized in the indictment.

## Conclusion

Since there was no evidence that any of the completed rounds distributed by Houston Cartridge Company which appellant possessed had been transported in interstate commerce as alleged in the indictment, appellant's conviction must be reversed. Evidence that prior to the Texas assembly of the completed rounds by Houston Cartridge Company, the powder, primer and bullets (projectiles), which later became component parts of the completed rounds, had separately traveled to Texas from, respectively, Tennessee, South Dakota and Montana, none of which was in any way alleged in the indictment, may not be relied on to establish the "in or affecting commerce" element of the offense because to do so would allow that element to be established on the basis of a set of facts wholly different, separate and distinct from the one set of facts particularly alleged in the indictment relevant to that element, and would thus constitute an impermissible constructive amendment of the indictment, contrary to *Stirone* and our decisions implementing it.

We accordingly reverse the conviction and order count 19 of the superceding indictment dismissed.[6]

---

[6] Where the indictment has been constructively amended, by prosecution evidence wholly outside the proper scope of the indictment and/or by a jury charge authorizing a verdict of guilty

22

thereon, but there is evidence within the proper scope of the indictment which supports the verdict, then the normal remedy is to reverse for a new trial. *See Stirone; United States v. Fitzpatrick*, 581 F.2d 1221, 1224 n.4 (5th Cir. 1978); *Adams*, 778 F.2d at 1125 n.13.

Here, however, as Chambers urged in his motions for judgment of acquittal, there is no evidence to support the "in or affecting commerce" element of the offense on the factual basis alleged in the indictment. Chambers' motions for judgment of acquittal should have been granted. *See United States v. Eaton*, 501 F.2d 77, 79-80 (5th Cir. 1974); *Davis*, 461 F.2d at 91; *McRary*, 665 F.2d at 680 & n.10; *Figueroa,* 666 F.2d at 1379-80. *See also Adams*, 778 F.2d at 1125 n.13; Wright, King & Klein, Federal Practice and Procedure: Criminal, § 516 at 48 ("The appropriate method to raise the claim [of constructive amendment] is by a motion for judgment of acquittal, or by objection to the introduction of evidence . . .").

However, in *Salinas*, 654 F.2d at 322, the court reversed and remanded for a new trial, and, although the opinion does not discuss why we chose to remand for a new trial rather than simply reverse, our discussion of the evidence indicates that there was no evidence to support the charge as made in the indictment, apart from that which constituted a constructive amendment. *See id*. at 323-325. However, this aspect of our *Salinas* opinion, *supra*, is inconsistent with what we did in our earlier cases of *Davis* and *Eaton*, neither of which *Salinas* cites. In *Mize* this court set aside a conviction where there was no evidence that the bank, whose funds the defendant Mize misapplied contrary to 18 U.S.C. § 656, was a member bank of the Federal Reserve System, as alleged in the indictment, although the evidence did show that it was insured by the FDIC (which was not alleged), both sorts of banks being within § 656, and the jury charge authorized conviction if the bank was "an insured bank." We held "we must reverse Mize's conviction, subject to reindictment and retrial." *Id*., 756 F.2d at 354. The *Mize* opinion reflects that the defendant did not object to the jury charge and although she moved for judgment of acquittal at the close of the government's case in chief that motion did not refer to the referenced discrepancy between the indictment and the evidence and was not renewed at the close of all the evidence. *Id*. at 355.

The dismissal we order here precludes retrial on count 19 of the instant superceding indictment because we held the evidence is insufficient to support its allegation that the completed rounds in question had traveled in interstate commerce, the only commerce nexus alleged. *Burks v. United States*, 98 S.Ct. 2141 (1978). Because we do not know whether the government will seek reindictment with different allegations we do not now opine on

23

REVERSED

whether retrial under another § 922(g)(1) indictment with materially different allegations would be barred by double jeopardy.