United States Court of Appeals
Fifth Circuit

**F I L E D**

**October 10, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

)))))))))))))))))))))))))

No. 05-30564

)))))))))))))))))))))))))

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

GARY D. HOOVER

Defendant - Appellant

_____

Appeal from the United States District Court
for the Western District of Louisiana, Monroe
No. 3:03-CR-30041-02

_____

Before JOLLY, PRADO, and OWEN, Circuit Judges.

PRADO, Circuit Judge:

Defendant-appellant Gary D. Hoover appeals his conviction of making a false statement to a federal agent in violation of 18 U.S.C. § 1001.  In addition to attacking the sufficiency of his indictment and the evidence supporting his conviction, Hoover challenges the district court's denial of his motion for severance.  He further argues that the district court constructively amended his indictment, split a single count of the indictment into two counts, and submitted a confusing verdict form.  Finally, Hoover argues that, even if none of these errors

alone warrants reversal, cumulatively, the errors require reversal. For the reasons that follow, we REVERSE and REMAND for further proceedings not inconsistent with this opinion.

## I. BACKGROUND

On July 17, 2002, Special Agent Bill Chesser of the Federal Bureau of Investigation ("FBI") executed a search warrant at Ruston Ford, a dealership in which the Hoover Group, a family investment group that includes Gary Hoover, owned a ninety-percent interest. After learning of the search from Ruston Ford's service manager, Hoover drove to the dealership to speak with Agent Chesser. Hoover and Agent Chesser spoke for a few minutes about the dealerships owned by the Hoover Group and Hoover's knowledge of, inter alia, "double floorplanning" or "double flooring" of vehicles, an illegal practice whereby a single vehicle is used as collateral for more than one loan. According to Agent Chesser, when he asked Hoover about his knowledge of double floorplanning, Hoover indicated that one employee who had been fired for malfeasance, Steve Howard, had made an allegation of double flooring at the dealership and that Hoover considered it "sour grapes." Agent Chesser testified that the issue was addressed once more during the interview, and Hoover said that Howard was the "one and only person who had raised double floorplanning to him as a[n] issue of the business." This statement forms the basis for Hoover's false

2

statement conviction.[1]

The government charged Hoover, along with three others, in an eight-count indictment. Hoover was implicated in count one, conspiracy to commit bank fraud, and count seven, making false statements to a federal agent. The alleged object of the conspiracy was to "artificially inflate the balances of the dealerships' bank accounts" through bogus drafting, check kiting, and double floorplanning. The indictment also alleged that Hoover made two false statements in an effort to cover up the conspiracy, one of which related to double floorplanning and the other to the Hoover Group's ownership interest in another car dealership. The jury acquitted Hoover of the conspiracy charge and the false statement relating to the ownership interest, but found him guilty of making a false statement about double floorplanning.

On appeal, Hoover attacks: (1) the sufficiency of the indictment; (2) the district court's jury instructions as an unconstitutional constructive amendment of the indictment; (3) the sufficiency of the evidence underlying his conviction; (4)

---

[1] Mike McHale, the owner of a ten-percent interest in Ruston Ford and general manager of the dealership, testified that he, too, discussed double floorplanning with Hoover. Additionally, William (Billy) Hulsey, a certified public accountant who prepared tax returns for the dealership, testified that he met with Hoover to discuss the issue. G.G. Grant, a former Ruston Ford owner who still oversaw the dealership's finances, also testified that he told Hoover that the dealership had a double floorplanning problem.

the district court's denial of his motion for severance; and (5) the district court's decision to split count seven into two counts.  Finally, Hoover argues that, even if none of these errors alone warrants reversal, cumulatively, the errors require reversal.

## II. DISCUSSION

A.  Sufficiency of the Indictment

As an initial matter, we address Hoover's argument that count seven of his indictment, making a false statement to a federal agent in violation of 18 U.S.C. § 1001, is insufficient. Count seven of the indictment alleged, inter alia, that Hoover "did knowingly and willfully make fictitious and fraudulent material statements and representations . . . during the course of an interview being conducted by [Agent Chesser of the FBI]" when Hoover "stated and represented that only one person had complained of 'double flooring' of vehicles . . . when in truth and in fact [Hoover], then and well knew that more than one individual had told him about the 'double flooring' of vehicles . . . ."  Hoover claims that the indictment failed to allege a false statement because more than one person could have "told" him about the double flooring of vehicles at the car dealership without "complaining" about it.  In other words, Hoover maintains that "complain" and "told" are not synonymous terms.  Moreover, Hoover argues that the indictment is defective because it alleged

4

that the statement was material without adducing any facts or circumstances to establish materiality.

This court generally reviews a challenge to the sufficiency of the indictment de novo, but where, as here, the defendant failed to object below, the appropriate standard of review is plain error.[2]  See United States v. Partida, 385 F.3d 546, 554 (5th Cir. 2004); see also United States v. Cotton, 535 U.S. 625, 631 (2002) (applying the plain-error test to the defendant's claim that the indictment failed to allege drug quantity where the defendant failed to object in the district court).  "Under that test, before an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affects substantial rights"--i.e., the error affected the outcome of the district court proceedings.  Cotton, 535 U.S.

---

[2]  Although Hoover moved the district court for a bill of particulars in order to seek more specific information from the government concerning the false statement count of the indictment, a bill of particulars cannot cure a deficient indictment.  We conclude, as did the Fourth Circuit, "that seeking this remedy--without objecting to the sufficiency of the indictment--does not preserve for review an alleged defect in the indictment."  United States v. Quinn, 359 F.3d 666, 672 n.2 (4th Cir. 2004) (reviewing sufficiency of the indictment challenge for plain error where the defendants moved only for a bill of particulars before the district court); cf. Russell v. United States, 369 U.S. 749, 770 (1962) ("[I]t is a settled rule that a bill of particulars cannot save an invalid indictment.").

Likewise, Hoover's post-verdict FED. R. CRIM. P. 34 motion to arrest judgment does not preserve a sufficiency of the indictment challenge.  See United States v. Rodriguez, 360 F.3d 949, 958 (9th Cir. 2004) (reviewing claim of insufficiency of the indictment raised for the first time in a Rule 34 motion for plain error); see also United States v. Serag, No. 05-4927, 2006 WL 1525950, at *3 (4th Cir. May 30, 2006) (same).

at 631-32 (internal quotation marks, alteration, and citations omitted).  "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings."  Id. (internal quotation marks, alteration, and citation omitted).

The basic purpose behind an indictment is to inform a defendant of the charge against him.  United States v. Fitzgerald, 89 F.3d 218, 222 (5th Cir. 1996).  As we recently explained in United States v. Partida,

> [t]o be sufficient, an indictment must conform to minimal constitutional standards, standards that are met where the indictment alleges every element of the crime charged and in such a way as to enable the accused to prepare his defense and to allow the accused to invoke the double jeopardy clause in a subsequent proceeding.

385 F.3d at 554 (citing United States v. Bieganowski, 313 F.3d 264, 285 (5th Cir. 2002)).

Keeping these principles and the plain-error test in mind, the allegation in count seven of the indictment satisfies the minimal constitutional requirements.  To violate § 1001, the defendant must have: (1) made a statement; (2) that was false; (3) and material; (4) knowingly and willfully; and (5) that falls within agency jurisdiction.  18 U.S.C. § 1001(a); see also United States v. Lange, 528 F.2d 1280, 1287 (5th Cir. 1976).  Count seven of the instant indictment alleged each element of § 1001 that the government was required to prove.  In doing so, the

6

indictment apprised Hoover of the charges against him, and it was sufficiently specific for double jeopardy purposes.  See United States v. Crow, 164 F.3d 229, 235 (5th Cir. 1999).

We are not persuaded by Hoover's argument that the indictment failed to allege a false statement because "complained" and "told" are not synonymous terms.  Although the terms are not generally thought of as synonyms, they can have the same connotation in certain contexts.  For example, both words are listed as synonyms for "squeal," meaning inform.[3]  The context of words is important because no two words are directly interchangeable.[4]  Here, the context of "complained" and "told" involved statements concerning the illegal practice of double flooring at the car dealership of which Hoover was an owner. Telling or informing Hoover of such an illegal practice could reasonably be characterized as making a complaint, especially where, as here, the subject matter is an improper business practice and the party being told is an owner of the business. Hoover's argument that "complain" is a subset of "tell," rather than a reasonable substitution, is overly technical, and we decline to use that as the test for determining the sufficiency

---

[3]  See ROGET'S NEW MILLENNIUM THESAURUS, FIRST EDITION, available at http://thesaurus.reference.com/browse/squeal (last visited Sept. 29, 2006).

[4]  See ROGET'S NEW MILLENNIUM THESAURUS, FIRST EDITION, available at http://thesaurus.reference.com/features/howtousethesaurus.html (last visited Sept. 29, 2006).

7

of his indictment.  Cf. Crow, 164 F.3d at 235 (noting that "[t]he validity of an indictment is governed by practical, not technical considerations").

Nor are we persuaded by Hoover's argument that the indictment is insufficient because it failed to include specific facts and circumstances to establish materiality.  Although the indictment must allege the essential elements of the charged offense, "'[i]t is not necessary for an indictment to go further and to allege in detail the factual proof that will be relied upon to support the charges.'"  United States v. Caldwell, 302 F.3d 399, 412 (5th Cir. 2002) (quoting United States v. Crippen, 579 F.2d 340, 342 (5th Cir. 1978)).

We therefore conclude that count seven of the indictment sufficiently stated the falsity and materiality elements under § 1001 and provided Hoover with notice of the offense charged. See United States v. Berrios-Centeno, 250 F.3d 294, 297 (5th Cir. 2001) (stating that "the core idea underlying an indictment is notification").  We do note that this analysis is made under the plain-error standard of review.

B. Constructive Amendment of the Indictment in the Jury Instructions

Having determined that the indictment was sufficient under a plainly erroneous standard, we next consider whether the district court erred when it instructed the jury that it could convict Hoover if it found that he "stated that only one person had

8

complained of 'double flooring' of vehicles and that such statement was intentionally false." Hoover contends that by replacing the "truth and in fact" clause of the indictment with a generic intent instruction, the district court constructively amended the indictment and, in turn, violated his Fifth Amendment right to a grand jury indictment. See United States v. Rubio, 321 F.3d 517, 521 (5th Cir. 2003) ("A constructive amendment violates the defendant's right under the Fifth Amendment to a grand jury indictment."). Stated another way, Hoover argues that while the indictment required the government to prove that he knew his statement was false because "more than one individual told him about the double flooring," the court's jury instruction allowed the government to obtain a conviction if it proved he knew his statement was false even if he knew it for some reason other than that more than one individual had told him about the double flooring of vehicles. Because Hoover objected at trial, we review the court's jury instructions for an abuse of discretion. See United States v. Pankhurst, 118 F.3d 345, 350 (5th Cir. 1997).

"The Fifth Amendment provides for criminal prosecution only on the basis of a grand jury indictment." United States v. Doucet, 994 F.2d 169, 172 (5th Cir. 1993); see U.S. CONST. amend. V ("No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . . ."). "It is a long-established principle of our

9

criminal justice system that, after an indictment has been returned, its charges may not be broadened through amendment except by the grand jury itself." United States v. Young, 730 F.2d 221, 223 (5th Cir. 1984). This court has held that "[a]n implicit or constructive amendment . . . occurs when it permits the defendant to be convicted upon a factual basis that effectively modifies an essential element of the offense charged or permits the government to convict the defendant on a materially different theory or set of facts than that with which she was charged." United States v. Reasor, 418 F.3d 466, 475 (5th Cir. 2005).

This court has addressed constructive amendment issues on numerous occasions. See, e.g., United States v. Chambers, 408 F.3d 237, 247 (5th Cir. 2005) (reversing a conviction for being a felon in possession of ammunition, where the indictment charged possession of whole ammunition "in or affecting commerce" and the jury was allowed to convict based on the travel of component parts, rather than the whole, of the ammunition in interstate commerce); United States v. Adams, 778 F.2d 1117, 1123 (5th Cir. 1985) (reversing a conviction for making a false statement and providing false identification in connection with the purchase of a firearm, where the indictment charged Adams with using a false name, but the jury was allowed to convict based on his use of a false address). And, while this court has never addressed the

10

issue in this case, the Third Circuit has.  In <u>United States v.</u>
<u>Crocker</u>, the Third Circuit held that "when a grand jury has
specifically charged the manner in which testimony is untruthful,
permitting the government to prove that it is untruthful in an
entirely different manner amounts to a constructive amendment of
the indictment rather than a mere variance."  568 F.2d 1049, 1060
(3d Cir. 1977).  In that case, a radio disc jockey testified to a
grand jury that he had never received cash or merchandise from a
record company to play its records.  However, a radio executive
later admitted paying the defendant to play his company's new
song releases.  The disc jockey was indicted for making the false
statements.  The indictment alleged that "[t]he declarations of
the defendant . . . as set forth in [the indictment], were false
in that, during the years 1974 and 1975, Ellsworth
Groce . . . gave in excess of $10,000 in cash to the
defendant . . . to promote the musical records of the companies
referred to in [the indictment]."  <u>Id.</u> at 1052.  At trial, over
the timely objection of defense counsel, the government produced
a witness, Charles Bobbit, who testified that he had also given
the defendant money for playing specific records.  Additionally,
the trial court instructed the jury that it could convict the
defendant if it concluded he testified falsely.  On appeal, the
Third Circuit reversed the defendant's judgment of conviction and
remanded for a new trial because the trial court permitted the
government to charge an entirely different factual basis for

11

falsity, and, consequently, constructively amended the defendant's indictment.  Id. at 1060.  We agree with the Third Circuit's analysis in Crocker, as it is consistent with our prior constructive amendment jurisprudence.  See, e.g., Reasor, 418 F.3d at 475.

An essential element of an 18 U.S.C. § 1001 violation is that the defendant knowingly make a false statement.  See Lange, 528 F.2d at 1287.  Hoover claims that the court's charge broadened the factual bases on which the government could prove that he knowingly made a false statement.  He contends that the indictment required the government to prove that he knew his statement was false because "more than one individual told him about the double flooring"; whereas, the court's jury instruction allowed the government to obtain a conviction if it proved he knew his statement was false, even if he knew it was false for some reason other than that "more than one individual had told him" about the double flooring personally.  The government counters by noting that § 1001 only requires that the government prove that the defendant knowingly made a false statement, not that the defendant knew what the true statement would have been.  Because the instruction did not modify any element of the offense, the government contends that Hoover's indictment was not constructively amended.

In accordance with the Supreme Court's decision in Stirone

v. United States,[5] when the government chooses to specifically charge the manner in which the defendant's statement is false, the government should be required to prove that it is untruthful for that reason. 361 U.S. at 219. To allow otherwise would permit the jury to convict the defendant on a basis broader than that charged in the grand jury's indictment. Hoover may have reasonably relied on the indictment and only prepared a defense that only one person had told him about the double flooring of vehicles, and, therefore, he did not knowingly make a false statement. However, based on the trial court's jury instructions, the government could have sustained a conviction by showing that Hoover knew that his statement was false for any reason, rather than being limited to the reason provided in the indictment. Importantly, under the language in the jury instructions, the government only needed to prove that Hoover knew that more than one person had complained about double

---

[5] In Stirone v. United States, the defendant was indicted for obstructing the interstate movement of sand in violation of the Hobbs Act. 361 U.S. 212, 215-16 (1960). The district court, however, instructed the jury that it could convict the defendant if it found that he had obstructed an interstate shipment of sand or steel. The Supreme Court reversed the defendant's conviction because it did not know whether the grand jury would have charged the defendant with obstructing the shipment of steel. Id. at 219. Therefore, "it c[ould not] be said with certainty that with a new basis for conviction added, [the defendant] was convicted solely on the charge made in the indictment the grand jury returned." Id. at 217. Moreover, the Court stated that even though the Hobbs Act does not require that an indictment specify the type of interstate commerce burdened, a conviction must rest on the charge specified in the indictment. Id. at 218.

13

flooring, not that he knew that more than one person complained to him.  For instance, the government could have shown that one person had told Hoover that two people had complained or that Hoover read two separate complaints.  Therefore, we conclude that because the indictment charged Hoover with making one false statement, and the jury instructions allowed the jury to convict him for making a different false statement, the trial court constructively amended Hoover's indictment.

"Where the indictment has been constructively amended, by prosecution evidence wholly outside the proper scope of the indictment and/or by a jury charge authorizing a verdict of guilty thereon, but there is evidence within the proper scope of the indictment which supports the verdict, then the normal remedy is to reverse for a new trial."  <u>Chambers</u>, 408 F.3d at 247 n.6; <u>see</u> <u>Doucet</u>, 994 F.2d at 172 ("Constructive amendment requires reversal of the conviction.").  Accordingly, we reverse Hoover's false statement conviction and remand for further proceedings not inconsistent with this opinion.

Because we reverse and remand for further proceedings, we need not reach Hoover's other points of error.

### III. CONCLUSION

For the foregoing reasons, we REVERSE and REMAND for further proceedings not inconsistent with this opinion.

REVERSED and REMANDED.

14